540 S.E.2d 542

**In re EMILY and Amos B.**

**No. 26915.**

Supreme Court of Appeals of
West Virginia.

Submitted April 12, 2000.

Decided June 16, 2000.

Concurring Opinion of Justice
Starcher July 20, 2000.

Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, Katherine M. Mason, Assistant Attorney General, Beckley, West Virginia, and Thomas L. Berry, Assistant Prosecuting Attorney for Mercer County, Princeton, West Virginia, Attorneys for the Appellant, West Virginia Department of Health and Human Resources.

Gerald R. Linkous, Randal W. Roahrig & Associates, Princeton, West Virginia, Attorney for the Appellee, Tracy B. and Angela Ash, Public Defender Corporation, Princeton, West Virginia, Attorney for the Appellee, Amos B. (father).

Thomas L. Fuda, Henderson & Fuda, Bluefield, West Virginia, Guardian ad Litem for the minor children, Emily B. and Amos B. (son).

DAVIS, Justice:

The appellant herein and petitioner below, the West Virginia Department of Health and

Human Resources [hereinafter "DHHR"], appeals the September 15, 1999, dispositional order entered by the Circuit Court of Mercer County regarding the minor children Emily B.[1] [hereinafter "Emily"] and her brother Amos B. (son) [hereinafter "A.J."]. In that order, the circuit court denied the DHHR's motion to terminate the parental rights of the children's parents, the appellees herein and respondents below, Tracy B. [hereinafter "Tracy"] and Amos B. (father) [hereinafter "Amos"],[2] and granted each of the parents a one-year improvement period to commence upon Tracy's successful completion of an inpatient substance abuse treatment program and Amos' release from federal incarceration. On appeal to this Court, the DHHR contends that the circuit court erroneously granted a delayed improvement period and improperly denied its motion to terminate Tracy's and Amos' parental rights. Upon a review of the parties' arguments, the appellate record, and the pertinent authorities, we reverse the decision of the Circuit Court of Mercer County granting the parents a delayed improvement period. We order reversal in this instance because such an improvement period is not permitted by the relevant statutes governing abuse and neglect matters. *See* W.Va.Code § 49–6–1, *et seq.* Furthermore, as a result of this ruling, we vacate the circuit court's order denying the DHHR's motion to terminate the respondent parents' parental rights, and remand this case to permit the lower court to reconsider the matter and to conduct further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On November 5, 1998, the DHHR filed in the Circuit Court of Mercer County a petition for the emergency custody of then five-

1. In this case involving sensitive facts, we adhere to our usual practice adopted in other such cases and refer to the parties by their last initials rather than by their complete surnames. *See, e.g., In re Michael Ray T.,* 206 W.Va. 434, 437 n. 1, 525 S.E.2d 315, 318 n. 1 (1999); *State ex rel. Diva P. v. Kaufman,* 200 W.Va. 555, 559 n. 2, 490 S.E.2d 642, 646 n. 2 (1997); *In re Tiffany Marie*

S., 196 W.Va. 223, 226 n. 1, 470 S.E.2d 177, 180 n. 1 (1996).

2. Tracy and Amos were once married to each other, and it appears that a divorce action was instituted prior to Amos' incarceration. It is unclear, though, whether the parties' divorce has been finalized.

year-old Emily[3] and then three-year-old A.J.[4] based upon Tracy's, their mother's, failure to retrieve the children from their day care provider,[5] and Amos', their father's, present inability to care for them as a result of his incarceration.[6] The events underlying this petition are as follows. On or about October 30, 1998, Tracy arranged for the children to spend the night with their day care provider, Patsy H. [hereinafter "Patsy"], presumably with the understanding that Tracy would retrieve the children the following day. However, Tracy did not return to Patsy's house the next day to pick up Emily and A.J. Additionally, she neither called nor checked on the children. Neither did she provide them with changes of clothing, food, medication, or a consent form giving Patsy permission to obtain medical care for them.[7] After the youngsters had stayed with their day care provider for three days, Tracy called to inquire about them and requested Patsy to bring the children to her. When Patsy refused to do so, Tracy indicated that she could not pick up the children herself. Ultimately, on the fifth day of the children's stay with Patsy, on November 3, 1998, their grandmother and Tracy's mother, Aletha M., picked up Emily and A.J.

By order entered November 5, 1998, the circuit court determined Emily and A.J. to be in imminent danger,[8] with no alternative but to temporarily remove them from their mother's care. See W.Va.Code § 49-6-3(a) (1998) (Repl.Vol.1999). In so ruling, the court also awarded legal and physical custody of the children to the DHHR. The DHHR, in turn, placed the children with their maternal grandmother, Aletha M., with whom they had been residing since November 3rd. Thereafter, a preliminary hearing was held on November 16, 1998. At that time, the circuit court found Emily and A.J. continued to be in imminent danger so as to preclude their return to Tracy's care, and continued their legal and physical custody with the

3. Emily's date of birth is August 31, 1993.

4. A.J. was born on September 20, 1995.

5. The DHHR also based its allegations of abuse and neglect upon Tracy's history of substance abuse and prior police reports of her failure to supervise the children.

6. During the events underlying this appeal, Amos has been incarcerated in the Federal Correctional Institution–Beckley, located in Beaver, West Virginia, where he is serving a fifty-one month sentence for the robbery of a bank and a convenience store. He is expected to be released from custody upon the completion of his sentence in March, 2001, but he may be released as early as October, 2000, to a "half-way house" in Dunbar, West Virginia, or on home confinement, as a result of good time credit.

7. Patsy reported that, when Tracy left Emily and A.J. in her care, both children were ill with colds, and one child had a fever. When Pasty mentioned the children's medical conditions to Tracy and inquired about medication for them, Tracy did not respond.

8. "Imminent danger," requisite to the removal of a child from the home of his/her parent or guardian at the behest of a petition to do so, see W.Va.Code § 49-6-3(a)(1) (1998) (Repl.Vol. 1999), is defined as follows:

"Imminent danger to the physical well-being of the child" means an emergency situation in which the welfare or the life of the child is threatened. Such emergency situation exists when there is ... reasonable cause to believe that the following conditions threaten the health or life of any child in the home:

. . . .

(4) Abandonment by the parent, guardian or custodian[.]

W.Va.Code § 49-1-3(e) (1998) (Repl.Vol.1998). See also W.Va.Code § 49-1-3(e) (1999) (Repl. Vol.1999) (same). In presenting its abuse and neglect petition to the circuit court, the DHHR relied upon the statutory definitions of "child neglect" and "neglected child" to demonstrate the children's imminent danger, as illustrated by the facts alleged in its petition. See W.Va.Code § 49-1-3(c) (1998) (defining "[c]hild abuse and[/or] neglect" as including "physical injury, mental or emotional injury, ... or negligent treatment or maltreatment of a child by a parent, guardian or custodian who is responsible for the child's welfare, under circumstances which harm or threaten the health and welfare of the child"); W.Va.Code § 49-1-3(h)(1) (1998) (construing term "[n]eglected child" as a child "(A) [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or (B) [w]ho is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the

DHHR. The court further ordered supervised visitation between Tracy and the children, and allowed the DHHR discretion as to whether to permit visitation with Amos.

Following these proceedings, the parties developed a family case plan whereby Tracy would complete extensive detoxification and substance abuse treatment programs, submit to random drug screens by the DHHR, and create a safe and stable home environment for Emily and A.J., including securing employment and maintaining a drug-free atmosphere. No family case plan was devised for Amos, however, presumably because the parties believed his incarceration would preclude his achievement of such goals.

The adjudicatory hearing scheduled for January 13, 1999,[9] was continued to March 31, 1999, at the request of Tracy's counsel, as a result of Tracy's enrollment in an inpatient substance abuse treatment program pursuant to the terms of her family case plan. On March 31, 1999, the court determined that Tracy had abandoned Emily and A.J. and that Amos had, by virtue of his incarceration, "technically abandoned" the children. Accordingly, the court adjudicated the children to be abused and/or neglected.

On April 28, 1999, the DHHR moved to terminate both parents' parental rights based upon the circuit court's findings of abandonment and its statutory obligation to seek termination of parental rights in cases involving abandonment.[10] *See* W.Va.Code § 49–6–5b(a)(2) (1998) (Repl.Vol.1999) ('directing that

the DHHR "shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights ... [i]f a court has determined the child is abandoned"). Finally, on September 15, 1999, the circuit court conducted a dispositional hearing in this case.[11] Upon the evidence presented for its consideration, the court rendered the following findings and conclusions:

> The Court **FINDS** that these infant children have a close and continuing relationship and strong bond with the respondent father,[12] that it appears the respondent mother was probably the primary caretaker prior to the initiation of this action, and the Court suspects there is a strong bond between the respondent mother and the infants. The Court **FINDS** that when a reunification plan is adopted as to one parent, termination of the other parent's parental rights normally serves no purpose. This Court has difficulty terminating the respondent mother's rights, because this Court **FINDS** it very difficult to terminate the rights of the respondent father under the facts before the Court. The Court **FINDS** that the respondent father has recently resided in a structured environment as a result of his conviction for bank robbery, that he is participating and complying with all services provided by the Federal Correction Facility, such as visitation, drug and alcohol counseling, and parenting programs. On the other hand, the respondent mother is in an unstruc-

child's parent or custodian"). *See also* W.Va. Code § 49–1–3(c, h(1)) (1999) (same).

9. In its preliminary order, the court noted that the parties had waived the statutory time constraints for the adjudicatory hearing due to the Christmas and New Year's holidays. *See* W.Va. Code § 49–6–1(a) (1998) (Repl.Vol.1999) (requiring, in abuse and neglect cases in which temporary custody of child has been awarded to DHHR, adjudicatory hearing to be held "within thirty days of such order [awarding temporary custody], unless a continuance for a reasonable time is granted to a date certain, for good cause shown"); W.Va.R.P. for Child Abuse & Neglect Proceed. 25 (same).

10. The DHHR also alleged in its motion that, since her departure from her inpatient treatment program, Tracy's whereabouts had been unknown, and that, as a result of her absence, it had been unable to conduct random drug

screens as permitted by an earlier order of the circuit court.

11. The dispositional hearing, initially scheduled for May 19, 1999, was continued on numerous occasions due to the unavailability of the psychologist who evaluated Emily and A.J. and as a result of various difficulties in securing Amos' transport from federal prison to the circuit court proceedings. For further treatment of an incarcerated parent's right to attend a dispositional hearing concerning the possible termination of his/her parental rights, see Syl. pts. 10 and 11, *State ex rel. Jeanette H. v. Pancake,* 207 W.Va. 154, 529 S.E.2d 865 (2000), which commits such a decision to the presiding circuit court's discretion.

12. The parties represent that Amos has been visiting with Emily and A.J. approximately twice a month since his transfer to the federal correctional facility in Beaver, in March, 1998.

tured environment, and has failed to comply with any services provided her, and suffers from an apparent drug addiction. The Court **FINDS** that this case is one of those rare exceptions to delay the implementation of a permanency plan; as the respondent father is due to be released from incarceration between October 2000 and March 2001; specifically that this is not a case where a limited six month improvement period will be appropriate. The Court **FINDS** that an extended improvement period, or delay in implementing the same, will not unduly prejudice the infants because the infants are doing well in their current foster placement with the visitation available, that it is in the best interest of the infants to currently maintain the existing bond with their parents, and although the Department of Health and Human Resources has identified adoption as the permanency plan for these infants, the Department has not secured a permanent placement as of this date.

This Court will defer further disposition in this matter, and it is the **ORDER** and **DECREE** of this Court that the State's Motion to Terminate Parental Rights be denied as to both respondent parents. It is the **ORDER** and **DECREE** of this Court that both respondent parents be granted a one (1) year post-adjudicatory improvement period,[13] that the formal implementation of the respondent father's six (6) month statutory improvement period be delayed until his release from incarcera-

tion, and that the formal implementation of the respondent mother's six (6) month statutory improvement period be delayed until she has successfully completed a long-term inpatient substance abuse treatment.... [14]

(Footnotes added). From this order of the circuit court, the DHHR appeals.

## II.

### STANDARD OF REVIEW

■ For appeals resulting from abuse and neglect proceedings, such as the case *sub judice*, we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard.

" 'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding sim-

---

13. In its dispositional order, the circuit court refers to the improvement periods granted to the respondent parents as "post-adjudicatory improvement period[s]." Because this relief was granted in the context of the dispositional hearing, rather than during the adjudicatory hearing, which occurred some six months earlier, it seems that the improvement periods awarded are more aptly denominated "dispositional improvement periods," as they were, in fact, granted as a type of alternative disposition in this case. *Compare* W.Va.Code § 49-6-2(b) (1996) (Repl.Vol.1999); W.Va.Code § 49-6-12(b) (1996) (Repl.Vol.1999); *and* W.Va.R.P. for Child Abuse & Neglect Proceed. 37 (pertaining to post-adjudicatory improvement periods) *with* W.Va.Code § 49-6-5(c) (1998) (Repl.Vol.1999); W.Va.Code § 49-6-12(c); *and* W.Va.R.P. for Child Abuse & Neglect Proceed. 38 (discussing alternative disposition improvement periods). Accordingly, we will henceforth refer to the relief granted by the cir-

cuit court to the respondent parents as *dispositional* improvement periods.

14. In this regard, the circuit court further instructed the parties as to the conduct expected of them at this time:

The Court **FINDS** that the reunification plan previously developed by the Department of Health and Human Resources for the respondent mother was a good plan, and directs that the same be implemented as a post-adjudicatory improvement period for the respondent mother; the Department is **ORDERED** to finance any substance abuse treatment programs it arranges for the respondent mother, and the respondent father should continue to pursue any appropriate services provided by the prison system, and not engage in any behavior that would delay his release.

ply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syllabus Point 1, *In re George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999).

Syl. pt. 1, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999). With this standard in mind, we consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, the DHHR assigns two errors: (1) the circuit court improperly granted the respondent parents a delayed improvement period to begin after Amos' release from prison and Tracy's com-

pletion of an inpatient substance abuse/detoxification program and (2) the circuit court erred by denying the DHHR's motion to terminate the parents' parental rights.

### A. Delayed Improvement Period

■ The DHHR first complains that the circuit court erroneously granted the respondent parents a delayed improvement period.[15] In this respect, the DHHR argues that improvement periods of the type awarded by the circuit court in this case are not authorized by the statutory law governing child abuse and neglect proceedings. *See* W.Va. Code § 49–6–2(b) (1996) (Repl.Vol.1999); W.Va.Code § 49–6–5(c) (1998) (Repl.Vol. 1999); W.Va.Code § 49–6–12 (1996) (Repl. Vol.1999). In turn, Tracy and Amos reply that the circuit court properly awarded them improvement periods in accordance with the governing statutes.[16] *See id.*

**15.** The DHHR additionally complains that the circuit court improperly granted the parents a one-year improvement period in violation of the applicable governing statute which limits dispositional improvement periods to six months' duration, with a discretionary three-month extension. *See* W.Va.Code § 49–6–5(c); W.Va.Code § 49–6–12(c, g). For his part, Amos suggests that the circuit court properly followed the statutory guidelines in awarding both parents a one-year delayed improvement period. In this regard, Amos represents that, following the conclusion of the six-month dispositional improvement period authorized by W.Va.Code § 49–6–5(c), the circuit court is required to hold a new dispositional hearing. Because the court could, in theory, dispose of the case anew by granting the respondent parent(s) another six-month improvement period, Amos argues that the duration of the improvement periods awarded by the circuit court in the proceedings underlying this appeal were not in error.

While our final resolution of this assignment of error does not require us to consider whether the precise duration of the improvement periods awarded was appropriate, see text at 540 S.E.2d at 555, *infra*, we nevertheless wish to speak briefly on this matter. In its dispositional order, the circuit court variously characterized the improvement periods awarded to the respondent parents both as a "one (1) year post-adjudicatory improvement period" and as "the respondent father's [and the respondent mother's] six (6) month statutory improvement period." As a result of this contradictory language, it is difficult to ascertain just how long the circuit court intended each of the parents' improvement periods to last, *i.e.*, six months or one year. In any event, however, we remind the circuit court that, on

remand, it must heed the statutory guidelines for improvement periods, and mould the parents' improvement periods, if any should be warranted, to the time constraints provided by the Legislature. To reiterate our earlier admonition,

[a]lthough it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996).

**16.** Tracy also contends that her entitlement to an improvement period should not be negated by her counsel's dereliction in duty, *i.e.*, his failure to follow the appropriate procedural rules which require a party to apply, in writing, for an improvement period. *See* W.Va.Code § 49–6–12(c) ("The court may grant an improvement period not to exceed six months as a disposition pursuant to section five [§ 49–6–5] of this article when ... [t]he respondent moves in writing for the improvement period...."); W.Va.R.P. for Child Abuse & Neglect Proceed. 17(c)(1) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is made in a written notice of the hearing on the motion."). Because our ultimate resolution of the improvement period issue concludes that the circuit court's ruling was clearly erroneous, see text at 540 S.E.2d at

■ At issue in this assignment of error is the authority of a circuit court to grant an improvement period to parents facing the termination of their parental rights, and the court's ability to further alter the commencement of such an improvement period. Typically, an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged. "The goal of an improvement period is to facilitate the reunification of families whenever that reunification is in the best interests of the children involved." *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 258, 470 S.E.2d 205, 212 (1996). *See also* Syl. pts. 3 and 5, *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987) (Syl. pt. 3: "Under W.Va .Code, 49–6–2(b) (1984), when an improvement period is authorized, then the court by order shall require the Department of Human Services to prepare a family case plan pursuant to W.Va.Code, 49–6D–3 (1984)."; Syl. pt. 5: "The purpose of the family case plan as set out in W. Va.Code, 49–6D–3(a) (1984), is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems.").

■ As such, one who faces the termination of his/her parental rights may, during the pendency of an abuse and neglect proceeding, move the presiding court for an improvement period pursuant to W.Va.Code § 49–6–12(a(1), b(1), c(1)). *Accord* Syl. pt. 9, *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 490 S.E.2d 642 (1997) (" 'W.Va.Code, 49–6–2(b) (1984), permits a parent to move the court for an improvement period which shall be allowed unless the court finds compelling circumstances to justify a denial.' Syl. Pt. 2, *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 356

S.E.2d 181 (1987).". *See also* W.Va.Code § 49–6–2(b) (1996) (Repl.Vol.1999) (indicating that, "[i]n any proceeding brought pursuant to the provisions of this article, the court may grant any respondent an improvement period in accord with the provisions of this article"); W.Va. R.P. for Child Abuse & Neglect Proceed. 17(c) (explaining proper form of motions in child abuse and neglect proceedings). Among the types of improvement periods that may be available to the petitioning parent are those that serve as an alternative disposition of an abuse and neglect proceeding [hereinafter "dispositional improvement period"],[17] such as the improvement periods at issue herein:[18]

The court may as an alternative disposition allow the parents or custodians an improvement period not to exceed six months. During this period the court shall require the parent to rectify the conditions upon which the determination was based. The court may order the child to be placed with the parents, or any person found to be a fit and proper person for the temporary care of the child during the period. At the end of the period the court shall hold a hearing to determine whether the conditions have been adequately improved, and at the conclusion of such hearing, shall make a further dispositional order in accordance with this section.

W.Va.Code § 49–6–5(c). *Accord* W.Va. R.P. for Child Abuse & Neglect Proceed. 38. Thus, a circuit court may, in its discretion, grant the abusing/neglecting parent an improvement period before it finally decides whether his/her parental rights should be ultimately terminated.

Improvement periods are further regulated, both in their allowance and in their duration, by the West Virginia Legislature, which has assumed the responsibility of implementing guidelines for child abuse and neglect proceedings generally. *See* W.Va.Code § 49–6–1, *et seq.* W.Va.Code § 49–6–12

---

555, *infra*, we need not further consider this matter. We do, however, caution the circuit court, on remand, to pay strict allegiance to the procedural requirements for the issuance of improvement periods prescribed by the statutory guidelines therefor, should it deem that any such improvement periods are warranted in this case.

*See, e.g.,* W.Va.Code §§ 49–6–5(c), 49–6–12; W.Va.R.P. for Child Abuse & Neglect Proceed. 17(c), 38.

17. *See infra* note 19.

18. *See supra* note 13.

(1996) (Repl.Vol.1999), the main statute pertaining to improvement periods, contains various criteria to be considered by a circuit court in determining the propriety of such relief in a given case. For dispositional improvement periods,[19] the statute provides:

(c) The court may grant an improvement period not to exceed six months as a disposition pursuant to section five [§ 49–6–5] of this article when:

(1) The respondent moves in writing for the improvement period;

(2) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period;

(3) In the order granting the improvement period, the court (A) orders that a hearing be held to review the matter within sixty days of the granting of the improvement period, or (B) orders that a hearing be held to review the matter within ninety days of the granting of the improvement period and that the department submit a report as to the respondent's progress in the improvement period within sixty days of the order granting the improvement period;

(4) Since the initiation of the proceeding, the respondent has not previously been granted any improvement period or the respondent demonstrates that since the initial improvement period, the respondent has experienced a substantial change

in circumstances. Further, the respondent shall demonstrate that due to that change in circumstances, the respondent is likely to fully participate in the improvement period; and

(5) The order granting the improvement period shall require the department to prepare and submit to the court an individualized family case plan in accordance with the provisions of section three, article six-d [§ 49–6D–3] of this chapter.

W.Va.Code § 49–6–12(c).[20] While delineating a six-month duration for dispositional improvement periods,[21] this section also permits a circuit court to extend a dispositional improvement period for an additional three months, if the circumstances of an individual case warrant such an extension:

(g) A court may extend any improvement period granted pursuant to subsection[ ] ... (c) of this section for a period not to exceed three months when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.[22]

W.Va.Code § 49–6–12(g) (footnote added). Upon the conclusion of a dispositional improvement period, and any extension thereof, the circuit court is required to conduct a final dispositional hearing within sixty days of the

---

**19.** For the sake of brevity, and to maintain consistency with the legal question at issue in this appeal, our discussion of the applicable law will focus primarily upon dispositional improvement periods. In the context of this analysis, however, we also will include references to the standards governing pre- and post-adjudicatory improvement periods, to the extent that such authority is available.

**20.** A similar method is employed for pre-and post-adjudicatory improvement periods. *See* W.Va.Code § 49–6–12(a, b).

**21.** Comparable time limits are imposed for pre- and post-adjudicatory improvement periods. *See* W.Va.Code § 49–6–12(a, b) (establishing three month and six month time frames for pre- and post-adjudicatory improvement periods, respectively).

**22.** This three-month discretionary extension is applicable also to post-adjudicatory improvement periods. *See* W.Va.Code § 49–6–12(g). *See also* Syl. pt. 2, *In re Jamie Nicole H.,* 205 W.Va. 176, 517 S.E.2d 41 (1999) ("Pursuant to West Virginia Code § 49–6–12(g) (1998), before a circuit court can grant an extension of a post-adjudicatory improvement period, the court must first find that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period would not substantially impair the ability of the Department of Health and Human Resources to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.").

improvement period's cessation. *See* W.Va. Code §§ 49–6–2(d), 49–6–12(k); W.Va.R.P. for Child Abuse & Neglect Proceed. 38. *But see* W.Va.Code § 49–6–12(j) (instructing that such a hearing may be continued only for "good cause").

Even with these detailed guidelines, however, a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period. For example, when the award of an improvement period would jeopardize the best interests of the subject child, the parent requesting such relief ordinarily will not be accommodated.

"[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened. . . ." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. pt. 7, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). Similarly, when a parent cannot demonstrate that he/she will be able to correct the conditions of abuse and/or neglect with which he/she has been charged, an improvement period need not be awarded before the circuit court may terminate the offending parent's parental rights.

" 'Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code*, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code*, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected.' Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). Syllabus point 4, *In re Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989)." Syllabus Point 1, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. pt. 7, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Likewise, when the conduct forming the basis of the abuse and/or neglect allegations consists of abandonment, such parental recalcitrance is perceived as so egregious as to warrant the virtually automatic denial of an improvement period. "Abandonment of a child by a parent(s) constitutes compelling circumstances sufficient to justify the denial of an improvement period." Syl. pt. 2, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991). Finally, a dispositional improvement period is not available to a respondent parent "where a finding is made pursuant to *W. Va.Code*, 49–6–5(a)(6) [1977] that there is 'no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future,' and, pursuant to *W. Va.Code*, 49–6–2(b) [1980], 'compelling circumstances' justify a denial thereof." Syl. pt. 3, in part, *In re Darla B.*, 175 W.Va. 137, 331 S.E.2d 868 (1985).

A parent's rights are necessarily limited in this respect because the pre-eminent concern in abuse and neglect proceedings is the best interest of the child subject thereto. Syl. pt. 3, *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 (1999) (" 'Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren).' Syllabus point 7, *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995).").

Once a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody.

Syl. pt. 8, in part, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). In other words, " '[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. pt. 3, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999). *Accord* Syl. pt. 1, *State v. C.N.S.*, 173 W.Va. 651, 319 S.E.2d 775 (1984) (" 'Though constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *parens patriae*, if the parent is proved unfit to be entrusted with child care.'

Syllabus Point 5, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973).").

 For this reason, then, the Legislature has very specifically commanded that abuse and neglect proceedings shall be accorded the utmost priority on circuit court dockets:

> Any petition filed and any proceeding held under the provisions of this article shall, to the extent practicable, be given priority over any other civil action before the court, except proceedings under article two-a [§ 48–2A–1 et seq.], chapter forty-eight of this code and actions in which trial is in progress. Any petition filed under the provisions of this article shall be docketed immediately upon filing....

W.Va.Code § 49–6–2(d). Echoing these directives, this Court has adopted comparable language in Rule 2 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides, in relevant part:

> These rules shall be liberally construed to achieve safe, stable, secure permanent homes for abused and/or neglected children and fairness to all litigants. These rules are not to be applied or enforced in any manner which will endanger or harm a child. These rules are designed to accomplish the following purposes:
>
> (a) To provide fair, timely and efficient disposition of cases involving suspected child abuse or neglect[ and]
>
> ....
>
> (d) To reduce unnecessary delays in court proceedings through strengthened court case management....

In the same vein, we repeatedly have held in our case law that abuse and neglect proceedings should be resolved as expediently as possible in order to safeguard the well being of the young children at the heart of such proceedings.

> " 'Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.' Syl. Pt. 1, in part, *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991)." Sylla-

bus point 3, *In re Jonathan G.,* 198 W.Va. 716, 482 S.E.2d 893 (1996).

Syl. pt. 2, *In re Michael Ray T.,* 206 W.Va. 434, 525 S.E.2d 315. *See also* Syl. pt. 7, *In re George Glen B.,* 205 W.Va. 435, 518 S.E.2d 863 (1999) (" 'The clear import of the statute [West Virginia Code § 49–6–2(d) ] is that matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible.' Syl. Pt. 5, *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991).").

Having reviewed the law of this State regarding improvement periods, we turn now to the parties' contentions in the instant appeal. In its order granting Tracy and Amos dispositional improvement periods, the circuit court delayed the commencement thereof until Amos' "release from incarceration" and until Tracy "has successfully completed a long-term inpatient substance abuse treatment" program. This ruling, however, has no basis in the applicable governing law. While the Legislature has created various types of improvement periods and has established specific time limits therefor, nowhere has it provided for the delayed implementation thereof. *See* W.Va.Code §§ 49–6–2(b, d), 49–6–5(c), 49–6–12. In fact, the very nature of a delayed improvement period contradicts the established legislative purpose of expediting abuse and neglect proceedings to safeguard the welfare of the child(ren) subject thereto. *See* W.Va.Code § 49–6–2(d); Syl. pt. 7, *In re George Glen B.,* 205 W.Va. 435, 518 S.E.2d 863.

Moreover, under the circumstances of the present case, the delayed implementation of the respondent parents' improvement periods is particularly problematic because, by the very terms of the court's ruling, the delay is indefinite. By basing the commencement date upon such a speculative condition as Tracy's successful completion of a substance abuse treatment program, the circuit court presupposes that she will be able to accomplish, in the short-term, what she has been unwilling to do for the ten and one-half

months preceding the circuit court's order.[23] Furthermore, the language employed by the circuit court in granting the respondent father a delayed improvement period is ambiguous. Because it has not defined what constitutes Amos' "release from incarceration," it is unclear as to whether his improvement period shall commence upon his release to a "half-way house" or home confinement, or whether his improvement period is further delayed until his ultimate release from federal custody in March, 2001. In any event, for each of the potential dates upon which Amos' improvement period could start, one naturally must assume that he will, in fact, be eligible for release upon those dates certain[24] and that he will not have lost any good time credited to his sentence. One must also suppose that Amos will be able to assimilate back into society, after a four year sojourn therefrom due to his own socially deviant behavior, to such a degree as to be determined a fit and proper caretaker for his children. As a result of the plethora of difficulties surrounding the very idea of delayed improvement periods, not to mention the logistical impossibilities of implementing the same and the rights of the innocent children which will unquestionably be trammeled if such an attempt is made, we conclude that the circuit court's order granting such relief to the respondent parents was in error.

■ Accordingly, we hold that the commencement of a dispositional improvement period in abuse and neglect cases must begin no later than the date of the dispositional hearing granting such improvement period. We hold further that, at all times pertinent thereto, a dispositional improvement period is governed by the time limits and eligibility requirements provided by W.Va.Code § 49–

6–2 (1996) (Repl.Vol.1999), W.Va.Code § 49–6–5 (1998) (Repl.Vol.1999), and W.Va.Code § 49–6–12 (1996) (Repl.Vol.1999).

As the delayed dispositional improvement periods at issue herein clearly violate the statutory mandates and contravene the judicial decisions pertaining to improvement periods, the decision of the circuit court awarding each of the respondent parents a delayed dispositional improvement period is hereby reversed.

### B. Termination of Parental Rights

In its second assignment of error, the DHHR requests this Court to reverse the circuit court's order denying its motion to terminate the parental rights of Amos and Tracy. To support this argument, the DHHR contends that Amos, as a result of his incarceration, has technically abandoned his infant children in that his imprisonment prevents him from providing for their care and support. Because abandonment can constitute neglect pursuant to the applicable statutory law, *see* W.Va.Code § 49–1–3(g)(1)(B) (1998) (Repl.Vol.1998),[25] the DHHR maintains that Amos' incarceration effectively amounts to neglect so as to warrant the termination of his parental rights. Likewise, the DHHR avers that Tracy has neglected and abandoned Emily and A.J. by virtue of her ongoing substance abuse problems and her inability and/or unwillingness to provide for the children's care and support.

Responding to these contentions, Amos and Tracy dispute that they have ever abandoned their children so as to warrant termination of their parental rights. Tracy contends that her conduct does not satisfy the six-month abandonment period contained in W.Va.Code § 48–4–3c(a)(2) (1997)

---

23. In his appellate brief, counsel for the respondent mother has indicated that "Tracy B. entered a drug treatment facility in Parkersburg, West Virginia, with the assistance of DHHR, shortly after the Circuit Court's granting of her improvement period, and as of the date of the writing of this Brief, she remains in said facility." While we commend Tracy's efforts, we have no information before us, apart from her counsel's solitary representation, demonstrating that the respondent mother has, in fact, complied with the circuit court's condition by "successfully complet[ing]" this treatment program.

24. Even the phrase "dates certain" is somewhat of a misnomer in this context as the precise dates upon which Amos anticipates to be released have repeatedly been communicated in the vague terms of particular months and years, rather than by reference to a precise day of such months and years.

25. *See supra* note 8 for the pertinent text of W.Va.Code § 49–1–3(g)(1)(B) (1998) (Repl.Vol. 1998).

(Repl.Vol.1999).[26] Likewise, Amos contends that he did not abandon his children because when he was incarcerated, he entrusted Emily and A.J. to their mother's care. In addition, the respondent parents assert that neither the statutes governing abuse and neglect proceedings nor this Court's jurisprudence interpreting the same include incarceration as a factor upon which the termination of a parent's parental rights may be based. Accordingly, they urge that the fact that a parent is incarcerated does not, *per se*, warrant the termination of the imprisoned parent's parental rights. *See, e.g., In re Adoption of Maynor*, 38 N.C.App. 724, 248 S.E.2d 875 (1978); Hon. Jean M. Johnson & Christa N. Flowers, *You Can Never Go Home Again: The Florida Legislature Adds Incarceration to the List of Statutory Grounds for Termination of Parental Rights*, 25 Fla.St.U.L.Rev. 335 (1998). Finally, Tracy contends that if, apart from the fact of his incarceration, Amos is entitled to participate in an improvement period and/or retain his parental rights, then her parental rights should not be terminated because, in the words of the circuit court, "when a reunification plan is adopted as to one parent, termination of the other parent's parental rights normally serves no purpose."

Although the allegations of abuse and neglect lodged by the DHHR against the respondent parents warrant careful consideration, and a final resolution to these year-and-a-half long proceedings is imperative, we are left with the firm conviction that the final disposition of this abuse and neglect case is more appropriately decided, in the first instance, by the circuit court. Our reasons for this conclusion are two-fold. First, in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact. Syl. pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 ("[W]hen an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous...." (internal citations and quotations omitted)). This Court, therefore, cannot set aside a circuit court's factual determinations unless such findings are clearly erroneous. *Id.* In the instant appeal, the record presented for our appellate consideration does not adequately contain essential information necessary for this Court to review the circuit court's rulings under a clearly erroneous standard. Conspicuously absent from the appellate record are the transcripts of the various hearings held in the proceedings underlying this appeal. Also missing from the record presented for our consideration are the reasoned recommendations of the children's guardian ad litem as to the disposition most consistent with Emily's and A.J.'s welfare and best interests, the only indication of which is a solitary reference in the circuit court's dispositional order reflecting that "the Guardian Ad Litem is seeking termination of the respondent mother's rights only."[27] Both of these pieces of vital information have been omitted from the record presented for our consideration despite our clear and oft-repeated admonitions that parties appearing before this Court are responsible for designating the appellate record[28] and that guardians are duty-bound to provide

26. W.Va.Code § 48–4–3c(a) (1997) (Repl.Vol. 1999), which is contained in the body of statutes governing adoptions, provides, in pertinent part:
(a) Abandonment of a child over the age of six months shall be presumed when the birth parent:
(1) Fails to financially support the child within the means of the birth parent; and
(2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: *Provided, That*

*such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.*
(Emphasis added).

27. Neither can we refer to the guardian's appellate brief for insight as to his recommendations as no such brief has been filed in this case.

28. *See* Syl. pt. 6, *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 ("The responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court.").

guidance to the tribunal charged with determining the subject child(ren)'s ultimate fate.[29]

Second, as we decided in the preceding section, *see supra* Section III.A., the circuit court erred by granting the parties a delayed improvement period as such a construct does not exist in either the statutory or jurisprudential law of this State. From those portions of the record that we do have at our disposal in the instant proceeding, however, it seems that the circuit court was very likely torn between the DHHR's allegations of abuse and neglect, on the one hand, and Amos' efforts to improve his parenting skills and continue his relationship with his children, on the other hand. While we do not profess to know the innermost workings of the Circuit Court of Mercer County, particularly in light of the fact that the appellate record is completely devoid of any hearing transcripts reflecting the lower court's reasoning for its rulings, we nonetheless find that it is quite likely that the circuit court granted the respondent parents delayed improvement periods in lieu of considering the merits of the DHHR's motion to terminate their parental rights. In that we have thwarted the circuit court's attempted circumvention of a final disposition of this case

at the present time, we conclude that it is proper to vacate the court's order insofar as it denied the DHHR's termination motion and to remand this case to permit the circuit court to reconsider, on the merits, the DHHR's motion to terminate Amos' and Tracy's parental rights. *See* Syl. pt. 7, *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 (" ' " ' 'In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken.' Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103[, 181 S.E.2d 334] (1971)." Syl. pt. 1, *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978).' Syllabus point 3, *Voelker v. Frederick Business Properties Co.*, 195 W.Va. 246, 465 S.E.2d 246 (1995).").

In spite of our conclusion that the circuit court is the better-equipped tribunal to render an initial disposition of this case, the parties' arguments nevertheless incorporate several important legal issues instructive to the circuit court's ultimate decision on remand. First, the respondent parents assert that incarceration, *per se*, does not warrant the termination of an incarcerated parent's parental rights. With this statement of the applicable law, we readily agree.[30] As it has

---

29. *See* Syl. pt. 5, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993) ("Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W.Va. Code*, 49-6-2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII [current Rule 21.01] of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1 .3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client. The Guidelines for Guardians *Ad Litem* in Abuse and Neglect cases, which are adopted in this opinion and attached as Appendix A, are in harmony with the applicable provisions of the *West Virginia Code*, the *West Virginia Rules for Trial Courts of Record*, and the *West Virginia Rules of Professional Conduct*, and provide attorneys who serve as guardians *ad litem* with direction as to their duties in representing the best interests of the children for whom they are appointed."). *See also* Syl. pt. 5,

*James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991) ("The guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home."); Syl. pt. 3, *In re Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991) ("In a proceeding to terminate parental rights pursuant to *W.Va.Code*, 49-6-1 to 49-6-10, as amended, a guardian *ad litem*, appointed pursuant to *W.Va. Code*, 49-6-2(a), as amended, must exercise reasonable diligence in carrying out the responsibility of protecting the rights of the children. This duty includes exercising the appellate rights of the children, if, in the reasonable judgment of the guardian *ad litem*, an appeal is necessary."). *See also* W.Va.R.P. for Child Abuse & Neglect Proceed. 52(g) (directing that "[t]he duties and responsibilities of a child's guardian ad litem shall continue until such child has a permanent placement, and the guardian ad litem should not be relieved of his responsibilities until such permanent placement has been achieved").

30. We disagree, however, with the characterization of the applicable law advanced by Tracy and Amos. In their responsive briefs, they contend that a parent facing termination of his/her parental rights is entitled to provide the court

been duly noted, the Legislature has assumed the task of establishing a body of law to govern abuse and neglect proceedings. *See* W.Va.Code § 49–6–1, *et seq.* Within this statutory authority, however, the Legislature has not deemed it necessary to base the termination of an individual's parental rights solely upon the fact of his/her incarceration. *See* W.Va.Code § 49–6–5(a, b).[31]

with information demonstrating extenuating circumstances which have prevented him/her from caring for and supporting the child(ren) subject to such termination proceedings. *See* W.Va. Code § 48–4–3c(d) (allowing birth parent to overcome presumption of abandonment by providing that he/she "shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child: Provided, That in no event may incarceration provide such a compelling circumstance if the crime resulting in the incarceration involved a rape in which the child was conceived"). Furthermore, the respondent parents indicate that the circumstances under which a parent may explain his/her failure to care for or support his/her child specifically do not include incarceration arising from a sexual crime during which the subject child was conceived. *Id.* To this point, all of these statements accurately reflect the law of this State–as it pertains to termination of parental rights for purposes of *adoption.* These points of law do not, however, govern *abuse and neglect proceedings* such as the one underlying the instant appeal. *See* Syl. pt. 1, *Parkins v. Londeree,* 146 W.Va. 1051, 124 S.E.2d 471 (1962) ("In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety."). Rather, abuse and neglect proceedings are governed by the separate body of statutory law contained in W.Va.Code § 49–1–1, *et seq.,* concerning "Child Welfare." *See* W.Va.Code § 49–1–1(a)(8) (1998) (Repl.Vol.1998) (enumerating goals of "Child Welfare" statutes, including to "[p]rovide for early identification of the problems of children and their families, and respond appropriately with measures and services to prevent *abuse and neglect*" (emphasis added)). *See also* W.Va.Code § 49–1–1(a)(8) (1999) (Repl.Vol.1999) (same). Accordingly, in explaining why termination of parental rights generally cannot be based solely upon a parent's incarceration, we will refer to the pertinent authorities concerning abuse and neglect proceedings instead of those governing the adoption process.

**31.** The applicable statutory law authorizes the termination of a parent's parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be

■ Indeed, in our numerous cases applying the Legislature's edicts in this regard, we also have been reluctant to find that incarceration, *per se,* warrants the termination of an imprisoned parent's parental rights. *See, e.g., State v. Tammy R.,* 204 W.Va. 575, 577 n. 4, 578 n. 7, & 580 n. 13, 514 S.E.2d 631, 633 n. 4, 634 n. 7, & 636 n. 13 (1999) (per curiam) (limiting appellate review

substantially corrected in the near future, and when necessary for the welfare of the child...." W.Va.Code § 49–6–5(a)(6). The phrase

"no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect, on their own or with help. Such conditions shall be deemed to exist in the following circumstances, which shall not be exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and such person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

(2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control;

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child;

(4) The abusing parent or parents have abandoned the child;

(5) The abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child; or

(6) The abusing parent or parents have incurred emotional illness, mental illness or mental deficiency of such duration or nature as to render such parent or parents incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills.

to issue of child's placement and declining to consider whether mother's incarceration amounted to abandonment so as to warrant termination of her parental rights); *West Virginia Dep't of Health & Human Resources ex rel. Wright v. Brenda C.*, 197 W.Va. 468, 479, 475 S.E.2d 560, 571 (1996) (per curiam) (Cleckley and Albright, JJ., concurring) (recognizing majority's failure to address impact of mother's incarceration upon circuit court's decision to terminate her parental rights); *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 712 n. 2, 356 S.E.2d 464, 466 n. 2 (1987) ("not[ing] that counsel for the appellant urges that Randolph W.'s prolonged incarceration constitutes willful abandonment of his child" and determining that, "[b]ecause of our holding in this case, we need not address the abandonment issue, which has far-reaching implications for any parent or guardian who may be incarcerated in a penal institution or becomes a patient in a mental institution"). Instead, we have cautiously acknowledged that while certain incidences of incarceration certainly are more egregious than others and should be considered when contemplating the termination of parental rights,[32] "[a] natural parent of an infant child does not forfeit his or her parental right to the custody of the child *merely* by

reason of having been convicted of one or more charges of criminal offenses." Syl. pt. 2, *State ex rel. Acton v. Flowers*, 154 W.Va. 209, 174 S.E.2d 742 (1970) (emphasis added).

 Thus, while an individual's incarceration may be *a* criterion in determining whether his/her parental rights should be terminated, other factors and circumstances impacting his/her ability to remedy the conditions of abuse and neglect should also be considered when making such a disposition.[33] *See, e.g., In re Jamie Nicole H.*, 205 W.Va. 176, 180–81, 517 S.E.2d 41, 45–46 (1999) (affirming circuit court's order refusing to extend mother's improvement period based upon her inability to care for her children and her lack of employment and suitable housing, which presumably resulted, in part, from her repeated incarcerations during abuse and neglect proceedings); *Nancy Viola R.*, 177 W.Va. at 713–15, 356 S.E.2d at 467–69 (basing termination of father's parental rights upon his conviction of first degree murder of his child's mother; his prolonged period of imprisonment therefor; his history of habitual alcohol abuse; *and* his history of domestic violence towards his child's mother). For example, in the case *sub judice*, the circuit court may consider Amos' incarceration in deciding whether his parental rights

W.Va.Code § 49–6–5(b).

32. *See* Syl. pt. 2, *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987) ("A conviction of first degree murder of a child's mother by his father and the father's prolonged incarceration in a penal institution for that conviction are significant factors to be considered in ascertaining the father's fitness and in determining whether the father's parental rights should be terminated."). *See also* Syl. pt. 2, *Kenneth B. v. Elmer Jimmy S.*, 184 W.Va. 49, 399 S.E.2d 192 (1990) (per curiam) (same).

33. We note that this approach is consistent with the practice followed by a number of our sister jurisdictions. *See, e.g., Ex parte D.O.G.*, 770 So.2d 597 (Ala.2000) (certiorari denied without opinion) (Hooper, C.J., dissenting) (recognizing that father's parental rights were terminated based upon his incarceration and his behavior while in prison, his history of substance abuse, and the fact that his child support payments are in arrears); *In re Ronell A.*, 44 Cal.App.4th 1352, 52 Cal.Rptr.2d 474 (1996) (upholding termination of incarcerated mother's parental rights where mother refused to attend parenting and drug rehabilitation classes and requested social services agency to refrain from contacting her

regarding abuse and neglect proceedings out of fear of retaliation by other inmates); *M.A.P. v. Department of Children & Families*, 739 So.2d 1287 (Fla.Dist.Ct.App.1999) (per curiam) (affirming termination of mother's parental rights based upon various factors, including her substance abuse problems, criminal history, failure to maintain stable employment or pay child support, and incarceration); *In re S.H.P.*, 243 Ga. App. 720, 534 S.E.2d 161 (2000) (determining that aggravating circumstances must accompany incarceration to provide grounds for termination of incarcerated parent's parental rights); *In re Maurice Jamel G.*, 267 A.D.2d 173, 700 N.Y.S.2d 452 (1999) (mem.) (finding abandonment sufficient to terminate parental rights where incarcerated father failed to communicate with his children and social services agency); *In re C.H.*, 25 S.W.3d 38 (Tex.App.2000) (basing decision to terminate incarcerated father's parental rights upon several factors, including incarceration and child's best interests); *Cain v. Virginia ex rel. Dep't of Soc. Servs. for City of Roanoke*, 12 Va. App. 42, 402 S.E.2d 682 (1991) (reversing termination of incarcerated mother's parental rights where termination was presumably based upon sole fact of mother's incarceration).

should be terminated, but the court must also evaluate additional evidence relevant to his ability to parent his children, such as his history of substance abuse; the allegations of his past domestic violence towards Tracy; his participation in parenting classes during his incarceration; his regular visits with and telephone calls to his children during his imprisonment; his frequent inquiries as to the health and well being of his children during these proceedings; and any additional information which the lower court deems instructive to its decision.

Next, the respondent parents contend that Amos' parental rights should not be terminated because he has a strong emotional bond with Emily and A.J. fostered, in large part, by his regular visits with his children during his incarceration.[34] From the record in this case, it is apparent that this precise factual issue has not been finally resolved by the circuit court in that reports by the psychologist evaluating the children variously indicate that there does and there does not exist such a bond, and that, if such emotional ties do exist, they are not equally experienced by both children. Likewise, we can find no indication in the appellate record of the guardian ad litem's views on whether continued visitation between the children and their father would be in the youngsters' best interests or whether it would, in fact, be detrimental to them. On this factual issue, then, we defer to the circuit court's initial evaluation of the evidence. *See* Syl. pt. 1, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 . Once the lower court has properly considered this information, it may use such findings to instruct its final disposition of this case vis-a-vis the extent of, if any, parental contact Amos will be entitled to retain.

■ In other words, if the circuit court deems that there exists a sufficient emotional bond between the respondent father and his children, but also concludes that his parental rights should be terminated, that tribunal may grant Amos post-termination visitation with Emily and A.J., provided such a continued relationship is in the children's best interests and "would not unreasonably interfere with their permanent placement."

*State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996).

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syllabus Point 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. pt. 8, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). *See also* Syl. pt. 11, *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996) ("A child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child."). We repeat our admonition, however, that in visitation matters, the best interests of the child(ren) are paramount. Syl. pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

■ Lastly, Tracy contends that if Amos is permitted to retain his parental rights, hers need not be terminated. Instead, she claims that "[t]he Circuit Court can merely order the custodial parent to not allow the children involved to have contact with the non-custodial parent," and that allowance of parental rights would enable the collection of child support from the non-custodial parent. As we have previously discussed, the circuit court is the more appropriate tribunal to decide, in the first instance, whether the respondent parents' parental rights should, in fact, be terminated. However, we wish to clarify a few points of law implicated by Tracy's contentions on this point.

---

34. The parties represent that Amos visits with the children twice per month. *See supra* note 12.

■ First, the argument advanced by Tracy in this respect fails to appreciate the fact that the termination of parental rights is not an all-or-nothing proposition. The statute governing terminations, W.Va.Code § 49–6–5, permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant. The circuit court is authorized,

> [u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, [to] terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent and [to] commit the child *to the permanent sole custody of the nonabusing parent, if there be one,* or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

W.Va.Code § 49–6–5(a)(6) (emphasis added). By the same token, simply because one parent has been found to be a fit and proper caretaker for his/her child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve. *Id.*

■ Additionally, to retain her parental rights, Tracy must demonstrate that she is, in fact, able to properly care for Emily and A.J. As we noted with respect to Amos, the circuit court must consider all the circumstances influencing Tracy's parenting abilities in rendering such a decision, including her occasional visits with Emily and A.J.; her substance abuse problems; her maintenance of, or her inability to maintain, a suitable home and steady employment; and her disappearance from January, 1999, until August, 1999.

Finally, in rendering a final disposition of this matter, we urge the circuit court to consider all of the possible dispositions available in abuse and neglect proceedings, *see* W.Va.Code § 49–6–5, and the circumstances under which termination of parental rights is statutorily required, *see* W.Va.Code § 49–6–5b (1998) (Repl.Vol.1999).[35]

## IV.

## CONCLUSION

For the foregoing reasons, we reverse that portion of the September 15, 1999, order of the Circuit Court of Mercer County awarding Amos and Tracy delayed dispositional improvement periods. We further vacate the circuit court's denial of the DHHR's motion to terminate the respondent parents' parental rights, and remand this case to permit the circuit court to reconsider such motion and render a final disposition in these abuse and neglect proceedings.

Reversed, in part, Vacated, in part, and Remanded.

STARCHER, Justice, concurring:

(Filed July 20, 2000)

I write to say that I am troubled by the future implications of the majority's opinion. While I do concur with remanding this matter to the circuit court, I am uncertain as to the message we are sending.

The circuit judge in this case went to great lengths to protect the welfare of a very troubled family. The mother is a drug addict; the father committed a crime allegedly to "feed his family." The mother is in and out of rehab; the father is stuck in a federal prison until the end of the year. And in the middle, two young children are growing up very quickly.

In looking at the facts in this case the judge did the best he could with the situation as presented to the court. It appears that the mother is so wrapped up in her addiction

---

**35.** With the first enumerated factor of the required termination criteria we are particularly concerned as we have not been able to discern from the appellate record whether Emily and A.J.

> ha[ve] been in foster care for fifteen of the most recent twenty-two months as determined by the earlier of the date of the first judicial finding that the child[ren] [were] subjected to abuse or neglect or the date which is sixty days after the child[ren] [were] removed from the home[.]

W.Va.Code § 49–6–5b(a)(1) (1998) (Repl.Vol. 1999).

that she does not provide care for the children. The father, however, seems to regret his actions and is struggling to maintain a relationship with the children. He regularly visits with the children in a prison visiting room, plays with them, talks, and inquires about their well-being. Beyond that, there isn't much he can do from the confines of prison except count the days.

The circuit judge placed the children in the legal custody of the Department of Health and Human Resources ("DHHR"), but provided both parents with an improvement period, with the father's to begin *after* he is released from prison.

This Court and the Legislature have repeatedly urged the DHHR to bring abuse and neglect cases to a quick conclusion, and I agree with this. But exactly how a prison sentence—even a brief one—fits into the concept of abandonment of children by a parent has never been considered by this Court. The DHHR is advocating for a clean, sharp rule: Because the father voluntarily committed a crime, he voluntarily "abandoned" the children. Because he abandoned the children, he fits within the abandonment portion of the abuse and neglect statutes, and should have his parental rights terminated. The DHHR basically argues that incarceration, *ipso facto*, requires a parent's rights to raise their children to be automatically terminated.

The Legislature has crafted broad guidelines for the DHHR and for the circuit courts to follow in deciding whether to terminate the "parental rights" of a parent. However, nowhere in these guidelines is "criminal incarceration" mentioned.

The majority opinion rightly rejects the DHHR's premise that incarceration of a parent should call for an automatic termination of parental rights. And I agree. The majority states that a parent's incarceration might be *a* factor to consider in deciding whether DHHR can take custody of a child, and even *a* factor in determining whether to entirely terminate any parental rights. But it cannot be *the sole* factor, as this case demonstrates.[1]

While a circuit court should not delay or drag out a parent's improvement period, the trial judge should not be stripped of the right to fashion a solution in these cases that addresses the ultimate best interests of a child—even if it means waiting for a dad to conclude a brief prison stint.

I agree with the majority's returning of this case to the circuit court for final disposition. But I do not agree that we should dictate the outcome to the circuit judge. The circuit judge in this case has demonstrated a strong desire to protect the interests of both the children and the parents. The father has repeatedly indicated he is willing and able to parent his children—his only impediment is a relatively short federal sentence. If the circuit judge believes that this parenting arrangement deserves a chance for the benefit of the children, this Court should not second guess the judge and arbitrarily say otherwise.

The goal of abuse and neglect proceedings is to protect children from severe physical and emotional trauma, and to provide every child with long-term stability. While we may not be able to provide every child with the perfect, white bread, cookie-cutter childhood replete with sitcom-like suburban experiences, the court system must fashion a solution that provides protection for children, with a reasonable opportunity to reach adulthood safely and in as good physical and mental health as practicable. And this opportunity may include permitting a father who has been incarcerated for a crime to continue to parent his children.

I am troubled that the majority's opinion might be read as giving direction to the circuit court to simply terminate both parents' rights. I would hope that the circuit judge in this case will again carefully examine the interests of the children and the parents, and again take whatever action he deems to be in the best interests of the

---

1. Criminal defense attorneys should, hereafter, warn their clients of the holding in this case if they have young children. By pleading guilty to a crime, a defendant may not only be giving up his freedom, and maybe his right to vote, own a gun, get a hunting or fishing license, but a defendant now may also, in some circumstances, have their parental rights terminated and lose their right to parent his child.

children, even if it means repeating the court's ruling that the father's rights not be terminated. Termination of the rights of the parents should be the answer only when other alternatives have failed.

With this caution, I concur.

I am authorized to state that Justice McGRAW joins in this concurrence.