648 S.E.2d 346

**In re AUSTIN G. and Breona R.**

**No. 33134.**

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 9, 2007.
Decided: Feb. 21, 2007.

---

584

Jeffrey S. Simpkins, Esq., Simpkins Law Offices, Susan J. Van Zant, Esq., Law Offices of Susan Van Zant, Williamson, for Bradley R.

Diana Carter Wiedel, Esq., Guardian ad Litem, Williamson, Darrell V. McGraw, Jr., Attorney General, Rebecca Stollar Johnson, Esq., Assistant Attorney General, Charleston, for DHHR.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Mingo County entered on February 3, 2006. In that order, the circuit court terminated the parental rights of Bradley R. to the infant children Breona R. and Austin G.[1] The circuit court also denied Bradley R.'s motion for post-termination visitation of both children. Bradley R. appealed the circuit court's adverse rulings against him. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this

1. "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of* *Human Servs. v. Cheryl M.,* 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

Court affirms the decision of the circuit court.

## I.

## FACTS

On February 3, 2006, the Circuit Court of Mingo County terminated the parental rights of Bradley R. and Alisha G. to Breona R. and Austin G.[2] Physical and legal custody of the infant children was granted to the West Virginia Department of Health and Human Resources (DHHR) for permanent placement. Breona R. was born April 25, 2005, while Austin G. was born February 18, 2003. Alisha G. is the biological mother of both children, while Bradley R. is the biological father only to Breona R. Austin G.'s biological father, Larry W., voluntarily terminated his parental rights on September 27, 2005.

Several months prior to the termination of Bradley R.'s parental rights, on September 1, 2005, the DHHR filed an emergency petition alleging that Austin G. and Breona R. were in imminent danger, as outlined by West Virginia Code § 49–6–3(a) (2004).[3] In its petition, the DHHR alleged that Alisha G.

and Bradley R. failed to cooperate with Child Protective Services (CPS) despite numerous visits to the home.

The DHHR believed that Alisha G. and Bradley R. were making efforts to avoid CPS since DHHR employees rarely saw the children when they stopped at their home. Alisha G. and Bradley R. often made excuses for Breona R.'s absences such as claiming the newborn was visiting friends in Virginia even though they were unable to provide names, addresses, or phone numbers of any of these individuals. The DHHR determined that Alisha G. and Bradley R. were not meeting the infant children's basic needs. For instance, there was no electricity in the home, the parents were neglecting the children's medical care by not keeping their scheduled doctors' appointments, and they were not getting the children's medical prescriptions filled.

Another factor causing concern for the DHHR was the fact that Alisha G. tested positive for opiates and barbiturates at the time of Breona R.'s birth. Alisha later reported to CPS workers that she had taken Valium, Lortab, and Xanax prior to the birth

**2.** This appeal was brought by Bradley R. to address the circuit court's termination of his parental rights. The circuit court's disposition with regard to Alisha G. or toward any other party involved in the proceeding below is not the subject of this appeal.

**3.** West Virginia Code § 49–6–3(a), provides:

Upon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible person found by the court to be a fit and proper person for the temporary care of the child pending a preliminary hearing, if it finds that: (1) There exists imminent danger to the physical well-being of the child; and (2) there are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychiatric, psychological or homemaking services in the child's present custody: Provided, That where the alleged abusing person, if known, is a member of a household, the court shall not allow placement pursuant to this section of the child or children in said home unless the alleged abusing person is or has been precluded from visiting or residing in said home by judicial order. In a case where there is more than one child in the home, or in the temporary care, custody or control of the

alleged offending parent, the petition shall so state, and notwithstanding the fact that the allegations of abuse or neglect may pertain to less than all of such children, each child in the home for whom relief is sought shall be made a party to the proceeding. Even though the acts of abuse or neglect alleged in the petition were not directed against a specific child who is named in the petition, the court shall order the removal of such child, pending final disposition, if it finds that there exists imminent danger to the physical well-being of the child and a lack of reasonable available alternatives to removal. The initial order directing such custody shall contain an order appointing counsel and scheduling the preliminary hearing, and upon its service shall require the immediate transfer of custody of such child or children to the department or a responsible relative which may include any parent, guardian, or other custodian. The court order shall state: (1) That continuation in the home is contrary to the best interests of the child and why; and (2) whether or not the department made reasonable efforts to preserve the family and prevent the placement or that the emergency situation made such efforts unreasonable or impossible. The order may also direct any party or the department to initiate or become involved in services to facilitate reunification of the family.

of Breona R. While Breona R. did not test positive for drugs, she did have symptoms of withdrawal.

On April 27, 2005, Alisha G. signed a protection plan with CPS. At the time, both children were being kept by their paternal grandmother, Margaret V., who is a registered sex offender in the State of West Virginia. Years earlier, Margaret V. pled guilty to violating W.Va.Code § 61–8D–5B,[4] for knowingly procuring another person to engage or attempt to engage in sexual exploitation of a child under the age of sixteen years.[5] The circuit court found that both Margaret V. and her husband, Billy Ray V., had a long and adverse history with the DHHR and repeatedly failed to protect children in their care throughout the years.

In June of 2005, it was also determined by the Mingo County DHHR that Bradley R. had another child in Wyoming County, separate from the underlying proceedings involving Breona R. and Austin G. With regard to that child, there were substantiated facts of abuse and neglect against Bradley R. for substance abuse. At the time of the proceedings before this Court, that child was in foster care.

During a September 6, 2005, preliminary hearing, the circuit court granted Bradley R. a pre-adjudicatory improvement period for ninety days. The circuit court outlined specific requirements such as random drug and alcohol screens, parenting classes, undergoing psychological tests, and attending substance abuse counseling. On January 25, 2006, the circuit court terminated the parental rights of Bradley R. and denied his motion for post-termination visitation. It concluded:

> The evidence clearly reflects the Respondent father, Bradley R., has not meaningfully participated in these proceedings.

At the Status hearing on September 27, 2005 the children's Guardian ad Litem reported both Respondent parents were doing well. However, since then, [Bradley R.] has failed to participate in services or to make substantial efforts. CPS Supervisor Webb testified the Department offered numerous services to [Bradley R.], including Advance Skills; Parenting training; Transportation assistance; In-home services through KVC and Family Options; Psychological evaluations, and; drug screening. [Bradley R.] was non-compliant with all offered services, and did not, in fact comply with any offered service. [Bradley R.] did not attend the Adjudicatory hearing, citing alleged transportation difficulties. [Bradley R.] was incarcerated during the Dispositional hearing but could have been transported to the hearing if he desired, or in the alternative, could have appeared via videoconference. However, he chose to voluntarily absent himself from the proceedings.

The circuit court found there was no reasonable likelihood that Bradley R. could substantially correct the conditions of abuse and neglect; that he had presented no evidence that he would meaningfully participate in an improvement period were he granted one by the circuit court; that he was unwilling to adequately care for the needs of the minor children, Austin G. and Breona R.; and that the continuation in his home was not in the best interests of the minor children. The circuit court permanently terminated Alisha G. and Bradley R.'s parental rights to Austin G. and Breona R. Bradley R. subsequently appealed the circuit court's order with regard to the termination of his parental rights and denial of post-termination visitation of both children.

---

4. W.Va.Code § 61–8D–5(b), in part, provides:

    If any parent, guardian, custodian or other person in a position of trust in relation to the child shall knowingly procure another person to engage in or attempt to engage in sexual exploitation of, or sexual intercourse, sexual intrusion or sexual contact with, a child under the care, custody or control of such parent, guardian, custodian or person in a position of trust when such child is less than sixteen years of age, notwithstanding the fact that the child

    may have willingly participated in such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, such parent, guardian, custodian or person in a position of trust shall be guilty of a felony. . . .

5. Those proceedings did not involve Breona R. or Austin G.

## II.

### STANDARD OF REVIEW

In this case, Bradley R. contends that the circuit court erred in terminating his parental rights and denying his motion for visitation to his biological daughter Breona R. and to Austin G. This Court explained in *In re Emily*, 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000) that, "For appeals resulting from abuse and neglect proceedings, such as the case *sub judice*, we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." Also, in Syllabus Point 1 of *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court held that:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With these standards in mind, we now consider whether the circuit court erred in this case.

## III.

### DISCUSSION

In this case, Bradley R. maintains that it is in the best interests of Breona R. and Austin G. that both children be placed in his custody. He contends that in *James M. v. May-nard*, 185 W.Va. 648, 408 S.E.2d 400 (1991), this Court held that when placing a child outside the custody of a natural parent, there is a preference to effectuate placement with the child's relatives. He further states that he has sought custody of both children from the beginning of the underlying proceedings and that he has a bond with both children.

Bradley R. further states that the DHHR initially did not oppose an Improvement Period for him, did not oppose visitation with the children, and that the circuit court granted custody to the DHHR in complete disregard to *Maynard*. He states that he was unable to attend the Dispositional Hearing because he was incarcerated at the time and maintains that due to his absence, the DHHR opposed placing the children with him and allowing him to have visitation. He believes that it would be in the children's best interest to be placed together in his home due to the familial relationship. Moreover, he states that the DHHR failed to prove he was an abusive parent and that the only allegation against him was that he had a substance abuse problem. He admits, however, that there were "slight instances" of domestic violence toward the children's mother Alicia G. Nonetheless, he concludes that since there were no allegations of abuse and/or neglect against him, he should have been granted custody of both children.

Conversely, Diana Carter Wiedel, the Guardian ad Litem for both children, states she is in complete agreement with the circuit court's ruling terminating Bradley R.'s parental rights. She states that Bradley R. was unwilling and unable to care for the children and maintains that he failed to participate in any of the DHHR's offered services or to comply with the circuit court's directives. She points out that the children are very young, need a permanent placement, and that at no time during the course of the proceedings has Bradley R. demonstrated any ability or desire to provide the children with a safe, stable, environment.

Likewise, the DHHR responds that according to this Court in *In re R.J.M*, 164 W.Va. 496, 266 S.E.2d 114 (1980), termination of parental rights may be employed without the use of intervening less restrictive alternatives when there is no likelihood that the

conditions of neglect or abuse can be substantially corrected as outlined by W.Va. Code § 49–6–5(b).[6]

Having thoroughly reviewed the entire record as well as the relevant statutory and case law in this matter we agree with the DHHR. This Court has held that:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va.Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va.Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, In re R.J.M., 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syllabus Point 4, In the Matter of Jonathan P., 182 W.Va. 302, 387 S.E.2d 537 (1989). In addition, this Court has declared that:

"[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened . . . ." Syl. Pt. 1, in part, In re R.J.M., 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syllabus Point 7, in part, In the Interest of Carlita B., 185 W.Va. 613, 408 S.E.2d 365 (1991).

Moreover,

"Termination of parental rights of a parent of an abused child is authorized under W.Va.Code, 49–6–1 to 49–6–10, as amended, where such parent contends nonparticipation in the acts giving rise to the termination petition but there is clear and convincing evidence that such nonparticipating parent knowingly took no action to prevent or stop such acts to protect the child. Furthermore, termination of parental rights of a parent of an abused child is authorized under W.Va.Code, 49–6–1 to 49–6–10, as amended, where such nonparticipating parent supports the other parent's version as to how a child's injuries occurred, but there is clear and convincing evidence that such version is inconsistent with the medical evidence." Syl. Pt. 2, In re Scottie D., 185 W.Va. 191, 406 S.E.2d 214 (1991).

Syllabus Point 5, West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S., 197 W.Va. 489, 475 S.E.2d 865 (1996).

In this case, Bradley R. was given numerous opportunities to become a part of these children's lives, but chose not to do so. For instance, in its September 6, 2005, order, the circuit court ordered psychological testing for both Alicia G. and Bradley R., along with random drug and alcohol screening, parenting classes, substance abuse counseling, and supervised visitation with the children one time per week. In spite of the circuit court's order, Bradley R. did not visit the infant children a single time during the months of November and December 2005. Moreover, he did not keep his appointment for psychological treatment, attend parenting classes, or cooperate with in-home drug screens. He also failed to attend the December 5, 2005, adjudicatory hearing, and did not

---

6. W.Va.Code § 49–6–5(b), provides:

(b) As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Such conditions shall be considered to exist in the following circumstances, which shall not be exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and such person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

(2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control;

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child;

attend the January 26, 2006, final dispositional hearing. We recognize that at the time of the January 26, 2006, hearing, Bradley R. was incarcerated at the Southwestern Regional Jail. Nonetheless, even though he was aware of the hearing and knew his parental rights were at stake, he made no request to be transported, nor did he request to appear via video conference.

It is clear to us that the DHHR made every effort to allow Bradley R. to be a good parent and he failed to partake in *any* of the services offered. Moreover, his failure to appear at court hearings to protect his interests, knowing that his rights to his children were in jeopardy, coupled with his lack of action with the directives of case law and the West Virginia State Code, lead us to conclude that the circuit court was correct in terminating the parental rights of Bradley R.

■ With regard to Bradley R.'s contention that he should have received post-termination visitation, the DHHR maintains that when no bond exists with the children, the consideration of post-termination visitation is not required. The DHHR contends that the circuit court properly denied such visitation. We agree.

■ We have long recognized that "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syllabus Point 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

In the case at hand, the DHHR made repeated efforts to visit with the infant children attempting to make sure that they were being properly cared for by Bradley R. and Alisha G. During those numerous visits, the DHHR found that Breona R. was not in the home for weeks at a time, but rather was "staying with friends in Virginia" even though she was only a newborn. The DHHR believed that Bradley R. was making an effort to avoid CPS since DHHR employees rarely saw the children when they stopped at their home. It further determined that neither Bradley R. nor Alisha G. were meeting the infant children's basic needs which included their medical care.

We find no evidence in the underlying facts to conclude that Bradley R. has developed a bond with either of these children. In fact, with regard to Breona R., the infant child has been in the custody of the DHHR since she was five months old and has been in her current foster home longer than she was in Bradley R.'s home. Furthermore, Austin G., who is not the biological child of Bradley R., never continuously lived in Bradley R.'s home. Instead, Austin G. spent a great deal of time with his grandparents, one of whom is a registered sex offender. Moreover, Bradley R. did not make a single visit with the children in November or December of 2005 despite having the opportunity to see them and with the full knowledge that his parental rights were in jeopardy. In addition, Bradley R. did not bother to take the drug tests the circuit court ordered, did not have a psychological examination completed, and did not attend parenting classes.

The DHHR points out that Austin G. and Breona R. are currently together in a pre-adoptive home where they have resided since March 2006 and are doing well in their placement. Conversely, as previously discussed, Bradley R. has made no effort to rectify his situation and there is no evidence that he has attempted to resolve the issues surrounding his drug use. This is further evidenced by the unresolved separate action filed against him by the DHHR in Wyoming County wherein Bradley R. was charged with substantiated abuse and neglect against him for substance abuse with regard to another child who is not a part of these proceedings. Moreover, Bradley R.'s actions with regard to his refusal to comply with any of the circuit court's directives demonstrate a willful rejection and unwillingness to cooperate in the development of a reasonable family case plan designed to lead to the children's return to his care, custody and control.

Finally, Bradley R.'s failure to follow through with any rehabilitative efforts of "so-

cial, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child" weigh heavily in this Court's decision. *See* W.Va. Code § 49–6–5(b). Thus, due to Bradley R.'s drug use, his failure to have any meaningful participation in his improvement period, along with his refusal to attend scheduled court hearings, we believe it is not in the best interest of these children to have post-termination visitation with Bradley R.

Consequently, we find that the circuit court did not abuse its discretion in terminating Bradley R.'s parental rights and denying his motion for post-termination visitation. Therefore, we affirm the February 3, 2006, final order of the circuit court.

### IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Mingo County entered on February 3, 2006, is affirmed.

Affirmed.