# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: S.J.**

**No. 15-0043** (Jackson County 14-JA-41)

**FILED**

June 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, T.J., by counsel Erica Brannon Gunn, appeals the Circuit Court of Jackson County's December 18, 2014, order terminating her parental rights to S.J. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Ryan M. Ruth, filed a response on behalf of the child supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred by allowing this case to proceed on a petition that was facially invalid; allowing the DHHR to amend the abuse and neglect petition after the presentation of the adjudication evidence; denying petitioner a post-adjudicatory improvement period; and terminating petitioner's parental rights without considering less-restrictive alternatives.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2009, petitioner's older child, N.J., died in Kentucky. The Office of the Associate Chief Medical Examiner of Kentucky conducted an autopsy and concluded that N.J. died as a result of bacterial septicemia arising from a perforation of the bowel caused by blunt injury to the bowel. The autopsy report went on to list the following injuries: (1) multiple scapular and cutaneous contusions to the face; (2) a mucocutaneous laceration to the upper lip; (3) cutaneous contusions to the left upper abdomen; (4) cutaneous contusions on the arms and legs; (5) bite marks near the mouth; (6) mucosal tear on the tip of the tongue; (7) brain swelling; and (8) missing patches of hair. To date, an explanation for these injuries has never been provided or reasonably explained.

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

In May of 2010, petitioner was indicted in the Commonwealth of Kentucky on one count of murder for killing two-year-old N.J. and one count of first-degree criminal abuse for abusing or permitting the abuse of N.J. As of the date petitioner filed her petition before this Court, her criminal case had yet to be heard by a jury or otherwise disposed by plea agreement. Petitioner posted bond and was subsequently permitted to leave the State of Kentucky, after which she relocated to West Virginia.

On June 11, 2014, petitioner gave birth to the subject child, S.J., in Charleston, West Virginia. Shortly after the child's premature birth, the hospital administration received complaints from parents in the waiting area of the neonatal intensive care unit ("NICU") about petitioner discussing her indictment for the murder of her older child in Kentucky. The hospital made a referral to Child Protective Services ("CPS").

On June 17, 2014, the DHHR filed an abuse and neglect petition against petitioner, alleging that the child, S.J., was abused and neglected, based on the information that petitioner was indicted in the state of Kentucky on one count of murder for killing her older child and one count of criminal abuse in the first-degree for abusing or permitting the abuse of the older child.

On June 30, 2014, petitioner waived her right to a preliminary hearing and on July 17, 2014, petitioner's adjudicatory hearing began. At the outset of the adjudicatory hearing, petitioner moved to dismiss the petition. The circuit court took the motion under advisement but proceeded with the adjudicatory hearing. Two additional adjudicatory hearings took place on August 4, 2014, and October 24, 2014. The circuit court heard testimony regarding the Office of the Associate Chief Medical Examiner of Kentucky's autopsy of N.J. The medical examiner also noted that, in his opinion, N.J.'s various blunt injuries were not characteristic of injuries typically appearing in active toddlers and that an explanation for these injuries had not been provided or reasonably explained. According to petitioner, she reported to police that a calf kicked N.J. in the stomach approximately a week prior to his death. She also reported that N.J. was up running around, singing the alphabet, and giving "high fives" on the morning of his death. Contrary to petitioner's account, a medical expert witness testified that all the injuries clearly pointed to severe physical abuse and that the case represents the most blatant case of murder by beating that he had ever reviewed. Additionally, the expert witness further testified that petitioner's reported account of the child's activities and condition the morning of his death and the twenty-four to forty-eight hours prior to his death was wholly inconsistent with his experience in treating patients with bacterial septicemia, as well as inconsistent with medical literature on bacterial septicemia. N.J. was seen at the University of Kentucky Medical Center emergency room three days prior to his death, and no medical personnel reported observing any contusions on his face or body, bite marks, or any other symptoms consistent with someone suffering from a perforated bowel and severe bacterial infection.

On August 15, 2014, S.J.'s biological father moved the circuit court for custody of the child. There were no allegations of abuse or neglect against the father, and the circuit court awarded custody of S.J. to the father. On September 17, 2014, the DHHR filed an amended petition alleging more particular facts surrounding the original allegations that petitioner murdered her son and committed chronic abuse against the child. On September 19, 2014, petitioner objected to the filing of the amended petition. The circuit court conducted a hearing on

that same day, which addressed petitioner's objections to the filing of the amended petition. Ultimately, the circuit court allowed the filing.

On October 24, 2014, the circuit court held a subsequent hearing to allow petitioner an opportunity to present additional evidence in light of the DHHR's amended petition. Petitioner declined to present any additional evidence and agreed to the closure of the adjudicatory record. On November 7, 2014, the circuit court entered an order adjudicating petitioner to be an abusing parent. On December 1, 2014, the circuit court held a hearing on petitioner's motion for an improvement period and the guardian ad litem's motion to terminate parental rights, which was joined by the DHHR. The circuit court denied petitioner's motion for an improvement period and terminated her parental rights. On December 18, 2014, the circuit court entered the dispositional order in this matter. It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court allowing this case to proceed on the abuse and neglect petition; allowing the DHHR to amend the abuse and neglect petition after the presentation of the adjudication evidence; denying petitioner a post-adjudicatory improvement period; or terminating her parental rights.

While petitioner argues that the first petition in this matter contained insufficient allegations to support a finding of abuse and neglect, and that the circuit court erred in allowing the DHHR to amend the abuse and neglect petition after the presentation of the adjudication evidence, these contentions are not supported by the record. The initial petition alleged that petitioner was charged with the murder and first-degree criminal abuse related to her older child, N.J. Pursuant to West Virginia Code § 49-1-3(1)(A), an abused child is one "whose health or welfare is harmed or threatened by a parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." At the adjudicatory hearing, the evidence established that petitioner was indicted in Kentucky on one count of murder for the death of two-year-old N.J. and one count of criminal abuse for abusing

or permitting the abuse of N.J. This was based on evidence that N.J. had suffered multiple physical injuries, a perforated bowel, and bacterial septicemia. The evidence also established that petitioner provided no explanation for N.J.'s multiple injuries. We have previously held that:

> "[b]ecause the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him or her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability."

Syl. Pt. 2, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996). It is clear that the circuit court, considering the totality of the circumstances surrounding N.J.'s death, had sufficient clear and convincing evidence to find that N.J. was an abused child and that, at a minimum, petitioner had subjected N.J. to chronic abuse and neglect resulting in death. While petitioner's abuse of N.J. was not specifically at issue in this proceeding, it is clear that the abusive conditions in the home that led to that child's death were not remedied because of petitioner's refusal to acknowledge the same.[2]

As to petitioner's allegation that the circuit court erred by allowing the DHHR to amend the abuse and neglect petition after all parties had rested upon the conclusion of the adjudication evidence, the Court finds no error in this regard. Petitioner correctly points out that Rule 19 of the Rules of Procedure for Child Abuse and Neglect Proceedings allows for liberal amendment of a petition. At the time of the filing of the original petition little was known about the death of N.J. All of the information gathered after the petition's filing and during subsequent hearings was newly acquired and permitted to be used as a basis to amend the petition. Petitioner, however, incorrectly states that the circuit court did not permit the parties to submit additional evidence during the adjudication phase. This is contrary to the record, which clearly indicates that the circuit court allowed petitioner, to present additional evidence at adjudication, and petitioner declined to present additional evidence and agreed to close the adjudication record. For those reasons, we find no error in the circuit court allowing the amended petition's filing.

As to petitioner's allegation that the circuit court erred in denying her an improvement period, the Court finds no error in this regard. West Virginia Code § 49-6-12(6) provides circuit courts discretion in granting improvement periods upon the finding that the parent is likely to fully participate in the same. In this matter, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected because the perpetrator of the abuse and neglect of N.J., S.J.'s sibling, has not been identified and petitioner

---

[2]We have previously held that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

4

took no action to identify the abuser. As noted above, failure to acknowledge abuse makes the problem untreatable and an improvement period "an exercise in futility at the child's expense." *In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As such, the circuit court found that the unacknowledged, unremedied, chronic child abuse and neglect of N.J. presented an unreasonable risk of harm to S.J. It is clear that the circuit court did not err in denying petitioner an improvement period, as our review of the record indicates that petitioner could not satisfy this burden.

As to petitioner's final argument that the circuit court erred in terminating her parental rights without considering less-restrictive alternatives, the Court finds no error in this regard. The circumstances surrounding the death of N.J. were egregious, and the evidence presented to the circuit court clearly shows that no less-restrictive dispositional alternative could have been implemented. As noted above, the circuit court found that there was no reasonable likelihood petitioner could correct the conditions of abuse in the home, as evidenced by her failure to acknowledge the same. This finding is in keeping with West Virginia Code § 49-6-5(b), which states that there is no reasonable likelihood that conditions of abuse and neglect can be substantially corrected when the abusing parent has demonstrated an inability to solve the problems leading to the abuse or neglect on their own or with help. Here, petitioner either inflicted the abuse that caused N.J.'s death or she knows who did inflict it and has taken no steps to identify the perpetrator of the abuse.

The circuit court correctly proceeded to termination of parental rights because it found that there was no reasonable likelihood of petitioner correcting the conditions of abuse in her home and that termination of parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings. We have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49–6–5 . . . may be employed without the use of intervening less-restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49–6–5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, termination of her parental rights to the child was not error.

Further, while petitioner argues that termination was not the least-restrictive alternative in regard to S.J because the child resided with the biological father, the Court finds no merit to this argument. We have previously held that West Virginia Code § 49-6-5 "permits the termination of one parent's parental rights while leaving the rights of the non-abusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights

if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.*

For the foregoing reasons, we find no error in the decision of the circuit court and its December 18, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: June 15, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II