# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **A.H.**

**No. 17-0783** (Harrison County 15-JA-68-3)

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.W., by counsel Allison S. McClure, appeals the Circuit Court of Harrison County's August 1, 2017, order terminating her parental rights to A.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jenna L. Robey, filed a response on behalf of the child in support of the circuit court's order. Father M.H., by counsel E. Ryan Kennedy, filed a brief in support of the circuit court's order. Petitioner filed a reply to M.H.'s brief. On appeal, petitioner argues that the circuit court erred in terminating her parental rights where less-restrictive alternatives to termination existed. The father raises a cross-assignment of error, arguing that the circuit court erred in ruling that he was not entitled to seek discovery in the underlying proceedings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, petitioner gave birth to A.H. while completing an improvement period regarding four older children.[2] Thereafter, in December of 2015, the DHHR filed an amended abuse and neglect petition to add A.H. to the case involving her siblings. In the amended petition, the DHHR alleged that petitioner failed to attend appointments with various service providers, failed to take drug screens, and was arrested on outstanding warrants for driving under the influence and driving without insurance. The DHHR also noted that A.H.'s father had filed for an Emergency Protective Order ("EPO") against petitioner. Although the circuit court denied the request for an EPO, the DHHR filed a request for emergency custody of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The custody of petitioner's four older children is not at issue in this appeal.

the child due to concerns of drug abuse by petitioner and subsequently placed A.H. with her father.

The DHHR filed a second amendment to the petition in January of 2016. In its amended petition, the DHHR alleged that petitioner tested positive at several drug screens and allowed her older children to be physically abused by her boyfriend. The DHHR further alleged that petitioner pled guilty to first offense of driving under the influence and driving without insurance and was sentenced to five months of home incarceration.

In May of 2016, the DHHR filed a third amendment to the petition in which it alleged that petitioner's post-adjudicatory improvement period regarding her four older children had been revoked due to her failure to attend all random drug screens and because she tested positive for hydrocodone and alcohol. The DHHR also alleged that petitioner had undergone a psychological evaluation in which she took little responsibility for her drug abuse. The evaluator opined that petitioner's prognosis for improving her parenting deficiencies was poor. The DHHR noted that petitioner's non-compliance and parenting deficiencies led it to seek adjudication of petitioner regarding A.H.

The DHHR filed a fourth amendment to the petition in June of 2016, in which it alleged that petitioner had been observed drinking alcohol at a local bar; that she had been sleeping at a location different than the address she gave to the DHHR; that she was scheduled for weekend jail time, having violated the terms of her home incarceration; and that she had been prescribed a narcotic for her ear surgery despite orders to request non-narcotics for pain. Later in June, the circuit court held an adjudicatory hearing with regard to A.H. Petitioner stipulated that she failed to provide a stable living environment for A.H. Specifically, petitioner admitted to residing in at least three separate homes with three separate individuals and to being periodically incarcerated. Petitioner then filed a written request for a post-adjudicatory improvement period. At a subsequent hearing, the circuit court granted petitioner's request, finding that she had not previously been granted one with respect to A.H., that she had attended visits with the child, and that she had made substantial improvement in complying with services since the revocation of her improvement period regarding the four older children.

In September of 2016, the circuit court granted petitioner an extension of her post-adjudicatory improvement period, despite having been incarcerated following the revocation of her home incarceration. The circuit court extended petitioner's improvement period again in October of 2016 and granted a post-dispositional improvement period in January of 2017, finding that petitioner had been substantially complying with the terms and conditions.

In July of 2017, the guardian requested that the circuit court terminate petitioner's parental rights because she believed little progress had been made during the improvement period, as petitioner would exhibit periods of compliance followed by bouts of missed appointments and alleged transportation issues. The guardian also stated concerns about petitioner's inability to maintain stable housing and provide proper care for A.H. Thereafter, the circuit court held a dispositional hearing, during which several witnesses testified that petitioner failed to fully comply with services. A therapist testified that petitioner failed to complete individual therapy, missed several appointments, and had not returned to her office since

November of 2016. The service provider for co-parenting counseling testified that petitioner only attended one session for which she arrived thirty minutes late. Another service provider testified that petitioner missed seventy-two drug and/or alcohol screens since entering the program in September of 2015. After being granted a post-dispositional improvement period in January of 2017, petitioner made a voluntary admission that she would test positive for alcohol in April of 2017 and tested positive for alcohol in May of 2017. The service provider testified that petitioner had not returned since testing positive in May and agreed with the Child Protective Services ("CPS") worker's report that petitioner would have missed at least seven random screens since that time. The CPS worker testified that petitioner claimed transportation problems prevented her from participating in some services yet failed to utilize transportation services available to her. While the CPS worker admitted that petitioner had participated in the bulk of her random screens between January and May of 2017, she testified that petitioner did not comply with requirements to obtain stable housing, missed some supervised visits, and continued to drive without a valid driver's license.

Petitioner then requested an extension of her post-dispositional improvement period. Petitioner explained that she failed her alcohol screen in May of 2017 after having a conversation with her oldest daughter, who informed her that she hated petitioner and did not wish to see her, which led petitioner to drink. Petitioner stated that she quit drinking approximately one and a half weeks prior to the hearing, obtained stable housing one week prior, and obtained employment as a bartender. Petitioner acknowledged that she resided at three separate locations in the six months leading up to the dispositional hearing and failed to pay child support. Ultimately, the court terminated petitioner's post-dispositional improvement period, finding that she had not exhibited substantial compliance with the required terms and conditions. Further, the circuit court found that petitioner had not demonstrated that she was likely to follow through with an extension. The circuit court found that petitioner had not complied with individual therapy or co-parenting counseling and failed to participate in drug screens after May of 2017. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare, particularly due to her tender age. As such, the circuit court terminated petitioner's parental rights.[3] It is from this August 1, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[3]A.H.'s father is a non-abusing parent and the permanency plan is for A.H. to remain in his custody.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives to termination existed. According to petitioner, West Virginia Code § 49-4-604(b) requires courts to give precedence to the least-restrictive dispositional alternative. As such, petitioner argues that granting a less-restrictive alternative to termination would have been appropriate as it would not have adversely affected A.H.'s needs as she remained in the care of her father. The Court, however, finds no error in the termination of petitioner's parental rights.

We have previously held that

"[a]s a general rule the least restrictive alternative regarding parental rights to custody of a child . . . will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements."

Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). Additionally, we have previously held that West Virginia Code § 49-6-5 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.*

Here, the circuit court found that a less-restrictive alternative to termination of petitioner's parental rights was not appropriate based upon her failure to substantially comply with the terms of her improvement periods and because the child was of a tender age. At the time of the dispositional hearing, A.H. was approximately twenty-two months old. Petitioner does not dispute that A.H. is thriving in the care of her father. While petitioner argues that no harm will come to A.H. because A.H. has stability in remaining with her non-abusing father, we note that this simple fact does not entitle her to a less-restrictive alternative to termination. This is especially true in light of the fact that petitioner was granted improvement periods and extensions stretching over the course of one year, not including a year of services provided to her through an improvement period regarding her four older children. Despite having been given substantial time and resources, petitioner did not correct the conditions of abuse and/or neglect.

4

She consistently failed to follow through with services and obtain stable housing, living in three different locations over the course of the six months leading up to the dispositional hearing, including with a convicted felon. Further, petitioner admitted to consuming alcohol and tested positive twice after being granted a post-dispositional improvement period. As such, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare. According to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings. Therefore, we find no error in the termination of petitioner's parental rights.

We next address the father's cross-assignment of error that the circuit court erred in finding that he, as a party in interest, did not qualify as a "party" as defined by Rule 3(m) of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings. He argues that denying him, and those in similar situations, the ability to participate in discovery frustrates the ultimate goal of achieving safe and secure homes for abused and neglected children.[4] We disagree. According to Rule 3(m), "parties" is defined as "the petitioner, co-petitioner, respondent, adjudicated battered parent, and child[.]" Petitioner cites to no authorities, nor to anything in the record, showing that he fell under this definition and was entitled to participate in discovery. As such, we find no error in the circuit court's denial of his request.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 1, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[4]The father was not included as a respondent in the proceedings below because the DHHR did not include any allegations of abuse or neglect against him.