**FILED**

**May 20, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.R., R.R., K.H., S.R., & A.R.**

**Nos. 21-0284 & 21-0287 (**Braxton County Case Nos. CC-04-2019-JA-3 to 7)

**MEMORANDUM DECISION**

The Department of Health and Human Resources filed a petition alleging that Petitioner Father A.R.-1 and Petitioner Mother A.R.-2 had abused and neglected their children due to Father's drug abuse and Mother's failure to shield the children from it.[1] Following adjudication and unsuccessful improvement periods, the circuit court terminated their parental rights. Despite the improvement periods afforded by the circuit court, Father and Mother continued the behaviors that created the abusive and neglectful conditions. And, critically, they refused to acknowledge that the conditions existed. The record contains ample support for the circuit court's finding of no reasonable likelihood that Father and Mother could substantially correct the conditions underlying the abuse and neglect. For those reasons, we affirm the circuit court's order terminating their parental rights.

Upon consideration of the standard of review, the briefs, the record presented, and the parties' oral arguments, the Court finds no substantial question of law and no prejudicial error. So, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

**I. Factual and Procedural History**

On April 4, 2019, the Department filed an amended abuse and neglect petition against Father and Mother. The petition alleged that they abused and neglected Father's biological children, R.R. and B.R, and Mother's biological children, A.R., S.R., and K.H. Before the petition, R.R. and B.R resided primarily with their paternal grandparents, and A.R., S.R., and K.H. lived with Father and Mother. The children's ages ranged from six to nine when the Department filed the petition. Specifically, the amended petition alleged that Father, among other things, (1) admitted to having anger issues, (2) admitted to smoking marijuana while leaving the children with Mother, and (3) failed a court ordered drug screen for methamphetamine, amphetamine, and tetrahydrocannabinol (THC) after a status hearing. And the petition alleged that Mother "knew or should have known of [Father's] abuse of controlled substances."

The petitioners admitted the allegations, and the circuit court adjudicated them as abusive and neglectful parents on May 2, 2019. After an initial disposition hearing on November 26, 2019,

---

[1] Bernard Mauser, Esq. represents Father and Andrew B. Chattin, Esq. represents Mother in this appeal. The Department is represented by Attorney General Patrick Morrisey, Esq. and Assistant Attorney General Lee Niezgoda, Esq. And the children are represented by guardian ad litem Mary Elizabeth Snead, Esq.

1

each was granted a six-month post-adjudicatory improvement period. Their respective improvement period requirements included, among other things, that "[Mother], shall not be around any[one] using, consuming or possessing an illegal controlled substance . . ." and "[Father], shall remain drug and alcohol free at all times, and shall submit to random drug screens . . . ." In its adjudicatory order, the circuit court stated that it "will not dictate to [Mother], the relationship she can have with [Father], but the [c]ourt will note it has grave concerns about returning [the children] to the home based on reports made by the children."

The circuit court held the final disposition hearing on August 14, 2020.[2] A Child Protective Services Worker (CPSW) testified that Father complied with some of his improvement period requirements and checked into inpatient drug rehabilitation three weeks before the hearing. But the CPSW also testified that Father failed a drug screen for methamphetamine during the improvement period, consistently denied having a drug problem, and claimed people coached the children to lie about him. The CPSW testified that Mother fully complied with her improvement period requirements, including passing all drug screens, maintaining steady employment at a nursing home, and attending all required parenting classes. But she also testified that Mother remained with Father despite knowing he abused drugs and that the children feared him. So, the CPSW urged the circuit court to terminate Mother's parental rights, emphasizing that "[t]he children have consistently stated to me that they want to stay in their current placement. [Mother's children] are adamantly against returning to the home of [Mother] because of [Father]. They believe that their mother has chosen [Father] over them."

Father and Mother also testified at the hearing. Father testified about his lengthy battle with substance abuse issues, his employment, his recent admission into drug rehabilitation, and his love for his children. But he also admitted to using methamphetamine during the improvement period, claimed that the children "have been coached on saying some of the stuff that's been said," and claimed "I'm not addicted . . . but I do have a drug problem." Mother testified about her compliance with the improvement period, her job, and her bond with her children. She also stated she knew Father failed a drug test during his improvement period and that "if my kids would ask me then I would [separate from Father]." But Mother denied many of the children's fears, claiming that S.R.'s and A.R.'s biological father and his acquaintances coached the children to report them and "told my kids to say stuff." The CPSW also testified that the petitioners did not have suitable housing for the children since the five children would have to live in a small basement with partitioned walls.[3]

---

[2] At a May 12, 2020, hearing, the circuit court extended the improvement periods three months beyond the initial six months because of conflicting claims about the petitioners' compliance with the improvement period conditions and circumstances surrounding the COVID-19 pandemic.

[3] Father and Mother testified that they completed renovations since the last time the CPSW had viewed the home. The circuit court resolved the conflicting testimony against Father and Mother and found that they did not have suitable housing based on the testimony of the CPSW. Because the circuit court had sufficient grounds to terminate regardless of the home's condition, we need not address the conflicting testimony about its condition.

By order dated October 5, 2020, the circuit court terminated Father's parental rights to his children and Mother's parental rights to her children. In its order, the circuit court emphasized "the emotional trauma that the conduct of [Father and Mother] have imposed upon [the] children." It found that "[d]espite the overwhelming evidence that the girls do not want to be around [Father], [Mother] has ignored it and repeatedly claims that the children have been coached to say bad things about . . . [Father]." For these reasons, the circuit court found that "[i]t is in the best interest of the children to terminate the [petitioners'] parental and custodial rights . . . as the children are young and deserve permanency."[4] Both petitioners appeal the termination order. On February 18, 2022, this Court issued an order consolidating their appeals for purposes of consideration and decision.

## II. Standard of Review

The standard of review for abuse and neglect cases is a clearly-established dual standard, deferential to the circuit court's role as fact finder:

> Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[5]

## III. Analysis

As we have previously stated, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must

---

[4] The permanency plan for Father's children is adoption by their paternal grandparents, with whom they have lived since before the Department filed the underlying abuse and neglect petition. The permanency plan for Mother's children is placement with their non-offending father D.R., with whom they have lived since the Department filed the underlying petition. According to the CPSW's testimony below and the guardian ad litem's representations to this Court, all children thrive in their placements and wish to remain there.

[5] Syl. Pt. 1, *In re L.W.*, 245 W. Va. 703, 865 S.E.2d 105 (2021) (quoting Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)).

3

be the health and welfare of the children."[6]   In the same vein,

> [t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604,] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected.[7]

And there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected under West Virginia Code § 49-4-604(d) when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."[8]

Father argues that the circuit court erred in terminating his parental rights to R.R. and B.R. because he substantially complied with his improvement period requirements and adequately addressed the circuit court's "concerns with addiction" by entering a drug rehabilitation program before the final disposition hearing.  And he insists that "through a comparison of the pass to fail ratios of his drug screens, with over eighty (80) passes, and only three (3) fails over a period of 22 months, it does not appear that [Father] should be deemed an addict."  He insists that the circuit court considered his drug use as its only ground for terminating his parental rights and that he "already availed himself of [steps] to address that limited problem . . . ."  He cites testimony from a May 12, 2020, review hearing where the CPSW testified that he had complied with his improvement period requirements up to that point.

First, Father's reliance on the CPSW's testimony from the review hearing overlooks the fact that he failed a drug test two days later.  At the final disposition hearing, the CPSW testified that he consistently denied having a drug problem and checked into the drug rehabilitation program too late.  During Father's testimony, he minimized his drug use by claiming that he is not addicted to drugs, and he continues to do so on appeal.  As we have recognized, acknowledgment of a problem is significant:

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's

---

[6]  Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

[7]  Syl. Pt. 4, *L.W.*, 245 W. Va. at 703, 865 S.E.2d at 105 (quoting Syl. Pt. 2., *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)).

[8]  West Virginia Code § 49-4-604(d) (2020).

expense.[9]

Given Father's drug use during the improvement period and his consistent downplaying of his drug problem, the circuit court acted within its discretion by finding no reasonable likelihood that he could correct the conditions of abuse and neglect. While Father argues that he took the steps to address his "limited problem," the evidence supports the circuit court's determination.

Turning to Mother's termination, she argues that "by all accounts [she] had successfully completed her improvement period except that she remained with her husband . . . [,]" that requiring her to choose whether to remain with Father "was unreasonable and that the issues between the children and their fear of [Father] could have been successfully handled addressed and solved through family counseling[,]" and that "[i]f the goal of an improvement period is progress by the parents in order to achieve reunification, . . . she was not dealt with in accordance with the rules and objectives abuse and neglect proceedings [sic]." We disagree.

The circuit court warned Mother of its "grave concerns" about returning A.R., S.R., and K.H. to her custody if she remained with Father, and according to the CPSW's testimony, the children expressed the same apprehension. Mother's improvement period conditions also prohibited her from associating with people using controlled substances. But she remained with Father even after learning he used drugs during their improvement periods. While she complied with most of her improvement period requirements, she displayed an unwillingness to shield her children from Father's drug use and its effects—the primary allegation for which the circuit court adjudicated her as abusive and neglectful. As we have previously noted,

> [i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.[10]

Mother argues that the circuit court could have required family counseling to treat the children's fear of Father, rather than terminate her parental rights. But the argument contradicts her testimony that people coached the children to lie and say they feared Father. Practically, we will not fault the circuit court for not considering an alternative remedy to a problem that she refused to acknowledge. Even so, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened . . . ."[11] While Mother argues that the circuit court left her with an unreasonable choice, "[i]n this case, as with all abuse and neglect proceedings, 'the best interests of the child is the polar

---

[9] *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

[10] Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

[11] Syl. Pt. 1, in part, *In re R.J.M*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

star by which decisions must be made which affect children.'"[12]

As to Mother's argument that the circuit court ignored the objectives of abuse and neglect proceedings, "[t]he goal of an improvement period is to facilitate the reunification of families *whenever that reunification is in the best interests of the children involved*."[13] The circuit court found that giving the children permanency in their placements better served their interest than returning them to Mother who exposed them to an abusive and neglectful partner, dismissed their fears, and failed to correct the conditions of abuse and neglect when given the opportunity. From the outset, the circuit court expressed its concerns to Mother about her relationship with Father, but she failed to correct the conditions caused by the relationship even when his behavior persisted. And despite her testimony that she would leave Father if her children asked her to, Mother's choice to remain with Father, despite his drug use during the improvement period, demonstrates otherwise. For these reasons, the circuit court acted within its discretion by terminating Mother's parental rights.

**IV. Conclusion**

For the above reasons, we affirm the circuit court's October 5, 2020, order terminating Father's and Mother's parental rights.

**ISSUED:** May 20, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

Justice C. Haley Bunn, not participating

---

[12] *West Virginia DHHR v. Yoder*, 226 W. Va. 520, 527, 703 S.E.2d 292, 299 (2010) (quoting *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989)).

[13] *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000) (quoting *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 258, 470 S.E.2d 205, 212 (1996)) (emphasis added).

6