**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.S., K.C., and B.W.**

**No. 23-66** (Kanawha County 22-JA-195, 22-JA-196, and 22-JA-198)

**MEMORANDUM DECISION**

Petitioner Mother T.S.[1] appeals the Circuit Court of Kanawha County's January 5, 2023, order terminating her parental rights to M.S., K.C., and B.W.,[2] claiming her parental rights were erroneously terminated based on drug possession alone or that a less restrictive dispositional alternative was proper. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2022, the DHS filed a petition alleging that law enforcement responded to a call that C.M., the father of M.S., was unresponsive in a vehicle with petitioner and M.S. According to the petition, C.M. "had injected an unknown substance" and was transported to the hospital by ambulance. The petition further alleged that "after [petitioner] witnessed [C.M.] become unresponsive from having injected the unknown substance, she decided not to inject the substance and hid the syringe and drugs in her bra." Law enforcement recovered the drugs and syringe and arrested petitioner for crimes related to child neglect. According to the petition, shortly before the filing of the current matter, petitioner was party to a prior abuse and neglect proceeding concerning K.C. and B.W. predicated on her substance abuse problem, which had not been remedied. Based on the foregoing, the DHS alleged that petitioner abused and neglected the children.

---

[1]Petitioner appears by counsel Sandra K. Bullman. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Jason Trautwein. Counsel Bryan B. Escue appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

At the subsequent preliminary hearing, the DHS presented testimony from a Child Protective Services ("CPS") worker who responded to the incident giving rise to the petition. According to the CPS worker, petitioner admitted that C.M. overdosed in the car before she was arrested. During the hearing, the court also noted that there was "an active [domestic violence protective order] already in effect" barring petitioner from contact with K.C. Ultimately, the court ordered the DHS to provide petitioner services and directed that she could participate in supervised visitation with the children "contingent upon random and negative drug screens."

In anticipation of the adjudicatory hearing, the DHS filed a court summary that indicated petitioner was not properly drug screening, as she had missed seventeen out of twenty-one screens and was "not drug screening randomly she is choosing what days she goes." In June 2022, the court held an adjudicatory hearing, during which the CPS worker again testified to the incident giving rise to the petition, include law enforcement removing objects from petitioner's bra upon her arrest. According to the CPS worker, law enforcement indicated that they removed drugs from petitioner and arrested her for "child abuse," although the worker stated she did not believe petitioner was under the influence at the time. Petitioner then testified and confirmed she was arrested for her conduct and that the substance police took from her was methamphetamine. Despite this admission, petitioner claimed that she did not have a substance abuse problem. In regard to C.M.'s overdose, petitioner claimed not to have seen it because she "wasn't looking at him" and that he must have injected the drugs "[w]hen [she] reached to grab . . . food." Finally, petitioner confirmed that she had recently received "six or seven months" of services in the prior abuse and neglect proceeding. After the presentation of evidence, the court took judicial notice that petitioner had been charged with the felony offense of child neglect resulting in the risk of injury. Based on the evidence, the court adjudicated petitioner of abusing and neglecting the children. The court ordered petitioner to continue participating in drug screens and was explicit that any missed screens would be considered failed.

In November 2022, the court held a dispositional hearing, during which a CPS worker testified that petitioner failed to cooperate with the required drug screens. According to the witness, petitioner missed forty-five screens during the proceedings. Based on petitioner's history of adjudication for substance abuse and refusal to screen as directed, the DHS requested the termination of petitioner's parental rights. Petitioner testified, disputed the number of missed screens, and claimed that the screens she missed were because she "was sick and . . . had car issues." Based on petitioner's failure to participate in services, the court found that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. Accordingly, the court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

---

[3]K.C. and B.W. were placed in the custody of their nonabusing fathers. According to respondents, M.S.'s father is participating in drug court, and the permanency plan for M.S. is reunification with the father with a concurrent plan of adoption in the current placement.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that it was error to adjudicate her because "drug possession alone does not constitute child abuse and neglect." Despite admitting that she "was in a bad situation" when C.M. overdosed in the vehicle, petitioner argues that she was not under the influence. These arguments, however, cannot entitle petitioner to relief because she ignores the fact that her admitted possession of methamphetamine and presence in the vehicle while C.M. injected drugs is clear evidence of her ongoing substance abuse, especially in light of her recent adjudication for substance abuse and remedial services to address the same in a prior proceeding. This evidence, coupled with petitioner's arrest for child neglect creating risk of injury and the active domestic violence protective order, clearly demonstrates that petitioner posed a threat to the children's welfare. As set forth in West Virginia Code § 49-1-201, a "neglected child" is, among other things, one "[w]hose physical or mental health is . . . threatened" by a parent's "refusal, failure or inability . . . to supply the child with necessary supervision." As set forth above, petitioner's ongoing substance abuse issues resulted in her inability to properly supervise the children. Accordingly, we find that the DHS presented sufficient evidence to support petitioner's adjudication for neglecting the children.[4] *See* Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) ("[West Virginia Code § 49-4-601(i)], requires the [DHS] . . . to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden.").

Finally, petitioner argues that because two of the children were placed with their nonabusing fathers, termination of her parental rights was unnecessary and did not constitute the least restrictive dispositional alternative. It must first be noted that petitioner raises no argument regarding the termination of her parental rights to M.S., the lone child who was not placed with a nonabusing father at the outset. Further, petitioner's argument concerning K.C. and B.W. ignores our prior direction that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Moreover, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Accordingly, this argument cannot entitle petitioner to relief. Based upon our review of the record, the evidence overwhelmingly supports the circuit court's findings in support of termination of petitioner's parental rights, and we find no error in the court's decision not to impose a less restrictive dispositional alternative. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood that conditions of neglect can be substantially corrected in the near future and when necessary for child's welfare); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect . . . can be substantially corrected").

---

[4]We note that the circuit court additionally adjudicated petitioner of abuse. However, because we find that petitioner's adjudication for neglecting the children was sufficient, it is unnecessary to address the court's ruling concerning abuse.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 5, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: February 13, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice C. Haley Bunn

BUNN, Justice, dissenting:

I dissent to the majority's resolution of this matter because I would vacate, in part, and remand this case for the circuit court to make the findings required to exercise subject matter jurisdiction over the children K.C. and B.W. pursuant to Syl. pt. 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023) ("To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named."). Accordingly, I respectfully dissent.