# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **K.P., A.T.-1, B.T., and A.T.-2**

**No. 25-234** (Hardy County CC-16-2023-JA-39, CC-16-2023-JA-40, CC-16-2023-JA-41, and CC-16-2023-JA-42)

## MEMORANDUM DECISION

Petitioner Mother C.P.[1] appeals the Circuit Court of Hardy County's March 3, 2025, order terminating her parental rights to K.P., A.T.-1, B.T., and A.T.-2, arguing that the court erred in adjudicating her when the children were in a legal guardianship and in terminating her parental rights when there were less drastic alternatives and termination was not necessary for the children's welfare.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Although the petitioner did not include them in the appendix on appeal, the record indicates that the proceedings below began with allegations related to adult respondents other than the petitioner. Eventually, the DHS filed a third amended petition that included allegations against the petitioner that mostly concerned sexual abuse of K.P. by several of her siblings while in the care of their grandparents. The grandparents were the legal guardians of K.P. and appear to have exercised at least partial custody of the other children. According to the DHS, the grandparents were made aware of the abuse but did nothing to stop it. Further, K.P. disclosed that the petitioner would visit the home to "help grandma take care of" the children. According to the DHS, when the petitioner was made aware of the sexual abuse, she "messaged [K.P.] about tearing their family apart, placing blame on the innocent victim." Further, the DHS alleged that K.P. disclosed that the parents lacked housing for several years prior to her placement with the grandparents. As such, the DHS alleged that the petitioner abused and neglected the children.

Thereafter, the petitioner filed a written stipulation in which she admitted that she lacked stable housing for several years, failed to provide for the children both financially and emotionally, and emotionally abused K.P. by blaming her for the sexual abuse. The circuit court accepted the

---

[1] The petitioner appears by counsel Madison B. Martin. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Joyce E. Stewart appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because two children share the same initials, we use numbers to differentiate them.

1

petitioner's stipulation at a hearing in January 2024 and adjudicated her of abusing and neglecting the children. Following adjudication, the petitioner filed a motion for a post-adjudicatory improvement period, which the circuit court denied. Nevertheless, the court ordered the DHS to provide the petitioner with services, including parenting and adult life skills classes.

Thereafter, the petitioner filed a motion for a post-dispositional improvement period. The court granted this motion at a hearing in April 2024. The terms of the petitioner's improvement period required her to, among other things, participate in parenting and adult life skills classes, maintain housing and employment, participate in therapy, and refrain from all illegal activities. In July 2024, the court held a status hearing, during which it was reported that the petitioner was inconsistent with services and had tested positive for methamphetamine on several occasions. Following the hearing, the DHS filed a motion to terminate the petitioner's improvement period because of her limited participation in services and three drug screens that were positive for methamphetamine. In September 2024, the court held a hearing on the DHS's motion and terminated the petitioner's improvement period upon evidence that she tested positive for methamphetamine ten times; failed to comply with services; and, after engaging in domestic violence, dropped her petition for a domestic violence protective order against K.P.'s father. In response to the positive drug screens, the petitioner testified that the results were "false" and that she did not abuse drugs. However, the circuit court found that her testimony lacked credibility because "she was non-plussed [sic] about the domestic violence that she alleged occurred in the home and takes no accountability or responsibility for her methamphetamine usage."

Ultimately, the court held a final dispositional hearing in February 2025, during which it took notice of the evidence and rulings from the prior hearing to terminate the petitioner's improvement period and heard testimony from a Child Protective Services worker. Based on the evidence, the court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future, especially considering that she was "residing back in the home with her father where the abuse occurred." The court found that the DHS made reasonable efforts to reunify the family, including "the management of" the petitioner's improvement period, psychological evaluations, parenting and adult life skills education, drug screen monitoring, and therapy. The court referred to the DHS's efforts as "exhaustive." Citing the children's need for continuity in care and caretakers and the amount of time required to be integrated into a stable home, the court also found that their welfare required termination of the petitioner's parental rights. Accordingly, the court terminated the petitioner's parental rights to the children.[3] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first asserts that the circuit court erred in adjudicating her because the children were not in her custody and, therefore, she did not abuse or neglect them. We disagree, as we have previously explained that

---

[3] The court also terminated the father's parental rights to K.P., and the permanency plan for the child is adoption. A.T.-1, B.T., and A.T.-2 were placed in the custody of their nonabusing father.

"[t]he mere fact that a child is in a legal guardianship [or otherwise out of the parent's custody] at the time an abuse and neglect petition is filed does not preclude" a finding of abuse and/or neglect against the parent, "provided that the child meets the definition of an 'abused child' or 'neglected child' as defined in West Virginia Code § 49-1-201." Syl. Pt. 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023), *overruled, in part, on other grounds by* Syl. Pt. 4, *In re R.M.*, 252 W. Va. 422, 923 S.E.2d 352 (2025). Here, there is no question that the petitioner's adjudication was proper, as she stipulated to failing to provide the children with housing and financial support for several years and emotionally abusing K.P. *See* W. Va. Code § 49-1-201 (defining "neglected child," in part as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with" necessities, including food, clothing and shelter; and defining "abused child," in part, to include one "whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts . . . mental or emotional injury upon the child or another child in the home"). As such, the court did not err in finding that the children were abused and neglected.

Next, the petitioner argues that termination was improper because the DHS did not make reasonable efforts to reunify the family. The petitioner is correct that, in terminating parental rights, West Virginia Code §§ 49-4-604(c)(iii) and (iv) require the circuit court to make findings regarding the DHS's efforts to reunify the family. Here, the court made extensive findings in this regard, noting that the DHS was exhaustive in its efforts to manage her improvement period and provided services, including a psychological evaluation, parenting and adult life skills education, drug screen monitoring, and therapy. The petitioner argues, however, that her therapy was delayed for one month because the DHS failed to pay a bill and that the DHS further failed to facilitate regular visits with the children because its provider "did not maintain a regular schedule" and had to cancel certain visits. Simply put, this is insufficient to establish that the DHS did not put forth the statutorily mandated reasonable efforts, especially considering the petitioner's limited participation in the services that she implicitly acknowledges were not interrupted, her multiple positive drug screens, and the fact that, at disposition, she was again living in the home where the children were abused. As such, she is entitled to no relief.

Finally, the petitioner argues that termination was not necessary for the children's welfare because A.T.-1, B.T., and A.T.-2 were placed in the custody of their nonabusing father.[4] This argument is unavailing, as we have previously explained that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* At disposition, the circuit court found that termination of the petitioner's parental rights was necessary for the children's welfare because they required consistency in their care and caretakers, among other factors. Further, the court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future—a finding the petitioner does not challenge on appeal. As such, we

_____

[4] The petitioner raises no specific argument as to why termination of her rights to K.P. was not necessary for that child's welfare.

conclude that the court did not err in terminating the petitioner's parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights upon finding there is no reasonable likelihood the conditions can be corrected and when necessary for the child's welfare); Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) ("Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))).

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 3, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 24, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III